### MIDDLETON v. MEE, Collector of Internal Revenue, and nine other cases.

(District Court, D. South Dakota, S. D. November 29, 1921.)

No. 111.

1. **Internal revenue ☞45—Distraint and sale of property for enforcement of penalties imposed by Prohibition Act may be enjoined; "tax."**

So-called "taxes" imposed by the Internal Revenue Department, under National Prohibition Act, tit. 2, § 35, are not taxes within the meaning of Rev. St. § 3224 (Comp. St. § 5947), and a suit in equity to enjoin their enforcement by distraint and sale of property may be maintained, where by reason of his inability to make the payments demanded the complainant is without other adequate remedy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Tax—Taxation.]

2. **Internal revenue ☞45—Penalties may not be assessed and collected by administrative officers by distraint without hearing.**

The impositions authorized by National Prohibition Act, tit. 2, § 35, for violation of the act, being penalties, may not lawfully be assessed by administrative officers and enforced by distraint and sale of property without a judicial hearing.

In Equity. Separate suits by Joe Middleton, by Frank M. Lawler, by Henry Schoberl, by Lee Schoberl, by Andrew Anderson, by Emil Mutschelknaus, by Charles Rosenbaum, Sr., by Charles Rosenbaum, Jr., by Henry Goehring, and by Matt Evans against J. W. Mee, Collector of Internal Revenue. On motion for preliminary injunction and motion by defendant to dismiss. Motion to dismiss denied and injunction granted.

Joe H. Kirby and R. A. Bielski, both of Sioux Falls, S. D., for plaintiffs.

S. W. Clark, U. S. Atty., of Redfield, S. D., for defendant.

ELLIOTT, District Judge. Separate suits in equity having been brought by Joe Middleton, Frank M. Lawler, Henry Schoberl, Lee Schoberl, Andrew Anderson, Emil Mutschelknaus, Charles Rosenbaum, Sr., Charles Rosenbaum, Jr., Henry Goehring, and Matt Evans, against

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. W. Mee, collector of internal revenue for the district of South Da-kota, upon motion of the plaintiff an order to show cause was entered in each case, and the motion of the respective plaintiffs for preliminary injunctions against the defendant, as collector of internal revenue, restraining him, pending the suits, from seizing and selling the prop-erty of the respective plaintiffs under threatened warrants of distraint. Counsel have presented the motions in all of these cases, and they are here for determination and will be disposed of by the court in this memorandum.

The cases, while not all presenting exactly the same state of facts, are nearly enough alike, so that it is unnecessary to state the facts in more than one of them. Taking the case first named in the title, and we find that it appears upon the face of the complaint that the plaintiff is a citizen of the state of South Dakota, a resident of McCook county, and that he brings this action against Mee, collector of internal reve-nue of the United States for the district of South Dakota. Plaintiff further shows, in substance:

That the plaintiff, at all the times mentioned in the bill, owned and operated a farm in McCook county, S. D. That on or about the 1st day of May, 1920, certain persons, claiming to be federal prohibition agents and agents of the Commissioner of Internal Revenue of the United States, proceeded with force and violence, and without his con-sent, to search his residence on said farm, and in the course of the search they seized and carried away certain personal property. That thereafter plaintiff was arrested and taken before the United States commissioner at Sioux Falls, and bound over to the grand jury. That thereafter an indictment was duly returned by the grand jury of this court, consisting of five different counts. That thereafter, upon mo-tion of the United States district attorney, the count charging the car-rying on of the business of a distiller without having given bond re-quired by law, the count that charged that the plaintiff did ferment a certain mash fit for the production of spirits in a building other than a distillery, and the count of said indictment which charged that the plaintiff by distillation did separate alcoholic spirits from a certain mash, were dismissed. That thereafter plaintiff was tried upon count 1 of said indictment, which charged the plaintiff with manufacturing intoxicating liquor, and count 2 of the indictment, the only counts remaining therein; the latter charging the unlawful pos-session of certain property designed for the manufacture of intoxicat-ing liquor. That the jury, by its verdict in this court, found the complainant guilty of count 2, the same charging possession of property designed for the manufacture of intoxicating liquor, and found him not guilty on count 1. That this court duly sentenced plaintiff to pay a fine of $500 upon the verdict of the jury on count 2, charging him with the possession of property designed for the manufacture of in-toxicating liquor, and that plaintiff paid this fine and was duly dis-charged. That on the 14th day of September, 1921, plaintiff was no-tified by the defendant that a tax had been levied and assessed against plaintiff as a retail liquor dealer on account of plaintiff's alleged vio-

lation of law, and an alleged tax had been imposed upon plaintiff as a manufacturer of intoxicating liquor, all in the sum of $3,474.

Plaintiff pleads a copy of said notice, which is as follows:

"Treasury Department, U. S. Internal Revenue.

"Form 1—17—Revised Nov., 1919.                    Pro. Nar.

"Original Notice and Demand for Tax and Receipt.

"Collector's Office, ——— District of S. Dak., at Aberdeen, Date 9—14—21.

"Notice is hereby given that there has been assessed against you the amount set opposite for the liability named which tax is payable to me. Demand is made for the payment of said tax on or before the date given below. Failure to do so will cause a 5 per cent. penalty to accrue with interest at 1 per cent. per month from due date until paid.

"J. W. Mee, Collector of Internal Revenue.

"Due date 9—24—21.

"Name—Joe Middleton,

"No. and Street—Salem.

"City and State—S. Dak.

"This notice must be presented at the time payment is tendered as when properly stamped 'paid' by the collector it becomes a receipt for taxes. See instructions on back.

"List 23A (Year) 1920 (Month) May (Folio) 2 (Line) 0—1—2.

"Illicit distilling and R. L. D. (character of tax or liability) for period ended 12 mos. 6—30, 1920.

Taxes, Penalties, etc.  Amount of tax.......................... $3,474.00
              per cent. penalty...........................
5 per cent. penalty...........................
        Total ........................... $3,474.00

"Received Payment.

"———————, Collector of Internal Revenue.

"Payment may be made in currency, post office money order, draft or certified check on a national or state bank or trust company, providing that such checks can be collected without cost to the government. It should also be borne in mind that the date when such checks may be cashed and the money deposited is the date of payment, and allowance should be made accordingly. Collectors cannot receive in payment of taxes uncertified checks, personal checks, drafts, or vouchers, and all indorsements by collectors on certified checks are made without recourse. Money orders, drafts and certified checks must be made payable to the collector of internal revenue."

On the 24th day of September, 1921, plaintiff was notified by defendant that a further tax or penalty of $173.70, with interest, in the amount of $208.44, making a total of $3,856.14, had been levied and assessed against plaintiff as a retail liquor dealer and for the illicit distilling of intoxicating liquor. Said notice was pleaded and is as follows:

"Treasury Department, U. S. Internal Revenue.

Form 1—21—Revised Nov., 1919.                    Pro Nar.

"Original Second Notice and Demand for Tax and Receipt.

"Collector's Office, District of S. Dak., at Aberdeen, Date 9/24/21.

"Having failed to make a payment of taxes set opposite within the prescribed time after notice and demand, Form 17, there has attached a 5 per cent. penalty on said tax and interest at 1 per cent. per month from date given below. Demand is made for said taxes, penalty, and such interest as may

accrue before payment. If payment is not made within ten days from the above date, it will be my duty to collect the same with costs by seizure and sale of property.
"Date interest began 7/26/20.

"J. W. Mee, Collector of Internal Revenue.

"Name—Joe Middleton.
"No. and Street—Salem.
"City and State—S. Dak.

"List 23A (Year) 1920 (Month) May (Folio) 2 (Line) 0—1—2.
"Illicit distilling and R. L. D. (character of tax or liability) for period ended 12 mos. 6/30/1920.
"Form 17, dated ———.

| | |
|---|---:|
| Taxes, Penalties, etc. Tax | $3,474.00 |
| per cent. penalty | |
| 5 per cent. penalty | 173.70 |
| Interest at 6 per cent | 208.44 |
| Total | $3,856.14 |

"Received payment.
"This notice must be presented at the time payment is tendered as when properly stamped 'paid' by the collector it becomes a receipt for taxes. Disregard all previous notices. See instructions on back.
"———, Collector of Internal Revenue.

"Payment may be made in currency, post office money order, draft or certified check on a national or state bank or trust company, providing that such checks can be collected without cost to the government. It should also be borne in mind that the date when such checks may be cashed and the money deposited is the date of payment, and allowance should be made accordingly. Collectors cannot receive in payment of taxes uncertified checks, personal checks, drafts, or vouchers, and all indorsements by collectors on certified checks are made without recourse. Money orders, drafts and certified checks must be made payable to the collector of internal revenue."

Plaintiff alleges: That these taxes, claimed to have been levied or assessed, are in fact penalties, and are levied without authority of law, for assumed or alleged infraction of the National Prohibition Act (41 Stat. 305). That as taxes they are wholly illegal and void. That as penalties they are levied without authority, and as such cannot be summarily imposed by the collector of internal revenue upon the plaintiff. That after the notices above set forth the defendant notified plaintiff that he was about to proceed to enforce the collection of these alleged taxes and penalties by distraint, by the levying upon, and sale of, plaintiff's property, under the provisions of section 3187 to 3209, inclusive, as amended, of the Revised Statutes of the United States (Comp. St. §§ 5909–5931), and further notified the plaintiff, that pursuant thereto the defendant collector would distrain, levy, and sell so much of plaintiff's property as might be necessary to pay and discharge said taxes and penalties. That on the 11th day of October, 1921, the defendant did levy upon, under an alleged warrant of distraint, the real property, the home of the plaintiff, and did, on that date, serve notice upon plaintiff that such property would be sold at public auction to the highest bidder on November 2, 1921, to satisfy such taxes and penalties, which notice was in words and figures as follows:

"Treasury Department, Internal Revenue Service.

"Office of the Deputy Collector, District of South Dakota.

"October 11, 1921.

"Mr. Joe Middleton, Salem, South Dakota—Sir: By virtue of a warrant for distraint issued to me by the collector of internal revenue of the district of South Dakota, I have levied on the following as your property: The northeast quarter of section twenty-two (22), township one hundred two (102), range fifty-five (55), McCook county, South Dakota. This levy is made on account of tax due for the year 1920, as follows:

"Illicit distilling 12 months ending 6—30—20. Section 1001, Revenue Act 1918. Illicit distilling 6 months ending 6—30—20. Sec. 35, National Prohibition Act. Retail Liquor Dealer, 12 months and 6 months ending 6—30—20, Sec. 35, National Prohibition Act, and tax on 35 gallons of spirits.

| | |
|---|---|
| Tax | $3,474.00 |
| 5% Pen. | 173.70 |
| Interest | 243.18 |

"You are hereby notified that I will offer for sale at public auction, to the highest bidder for cash, the property described above on Wednesday, November 2, 1921, at 2 o'clock p. m. Said sale to be conducted at front door of courthouse in Salem, South Dakota.                    Wm. Kelley,

Deputy Collector of Internal Revenue, District of South Dakota."

Plaintiff alleges that the defendant is not financially able to respond in damages for the value of the property of the plaintiff which he threatens to seize, and on that account plaintiff is without an adequate remedy at law. Plaintiff further alleges: That he is unable to pay the demands of the defendant, and that it is absolutely impossible for him to raise sufficient money to satisfy these alleged claims, and that, if the defendant so seizes the real property of the plaintiff, it will put a cloud upon the title thereto, and that the filing of this claim and assessment is a cloud thereon, to the irreparable injury of the plaintiff. That it further appears in these cases, to the satisfaction of the court upon this hearing, that these plaintiffs cannot raise the money with which to pay these alleged assessments. That to require them to raise this money, and pay it as a tax, and then present their claims, respectively, for rebates, to the Commissioner of Internal Revenue of the United States, to the end that he may act thereon within six months, to repay the same if his action is in their favor, or they may proceed against him in a court of competent jurisdiction if he denies them the relief they ask, or if he fails to act within that time, is to absolutely deny them any remedy at law. As a matter of fact, I find that to require these respective plaintiffs, poor men, to pay these exorbitant sums taxed against them, and then to go into court and sue for the return of the money, is absolutely prohibitive in each case, and the impossibility of their compliance with such a requirement leaves them with no remedy at law.

Plaintiffs then pray for an order and decree permanently enjoining and restraining defendant, and all persons acting under or by his authority, from the execution of the warrant of distraint, or threatened distress, levy of sale. Plaintiff also prays that in the meantime a restraining order may be issued and granted by this court, enjoining and restraining defendant collector and all persons acting under him or under his authority, from the issuance or execution of any war-

rant for distraint, or the levying upon or sale of any property of the plaintiff, for the collection of these alleged taxes and penalties. It is conceded by all parties that there has been no adjudication that plaintiffs are liable for the payment of these taxes or penalties, and no proceeding instituted, giving the plaintiff his day in court, having as its purpose the assessment of the penalties herein named, or any penalties, against the plaintiff and in behalf of the United States.

There are differences in the petitions of the different plaintiffs, though they all contain these material allegations. In the case of one plaintiff it is alleged that he was arrested and taken before a commissioner, and never was indicted, alleging that same was presented to the grand jury and no bill returned; another, that he was arrested for selling a bottle of Pep-Tonic, being a drug clerk, poor and without means; another that he was a druggist, and sold a bottle of this same Pep-Tonic; and so, with minor differences, but the same arbitrary assessment of this large amount of taxes or penalties appearing in all the cases. In each case the assessment has been made and the same filed as a lien against the property of the respective plaintiffs, and distraint in each case has been made or is threatened. In other cases plaintiffs have either been convicted, or have pleaded guilty to a violation of the National Prohibition Act, being the same act under which the alleged assessment of taxes and penalties was made by the defendant. In other cases no arrests have been made, no indictment returned, no proceedings have been taken thereunder, and in others indictments have been returned, and arrests made, but no trial.

The defendant, upon the date of the return of the order to show cause and the hearing of plaintiff's motion for a preliminary injunction, moved the court, in each case, that the action be dismissed, in that the plaintiff does not state facts sufficient to constitute a cause of action against the defendant; for want of equity, in that the plaintiff has a plain and adequate and speedy remedy at law; and that plaintiff may not maintain this action by reason of the provisions of section 3224 of the Revised Statutes of the United States.

[1] The first question presented by counsel upon the motion to dismiss is whether or not these so-called taxes and penalties, which have been assessed by the defendant and sought to be collected, are, in fact, a tax within the meaning of that term as used in section 3224, R. S. (Compiled Statutes, § 5947). This question was fully considered by District Judge Booth, in Thome v. Lynch (D. C.) 269 Fed. 995, and his analysis is so full and complete, and meets my own judgment of a proper interpretation of these statutes, that no good purpose can be served by a review of the statutes or a restatement of his analysis, which appeals to me as being sound and as an interpretation of the rights of these parties, and as being unquestionably the rights of the parties to these actions under the facts presented, considered with the various statutes necessarily to be construed.

Counsel in this case do not urge that, if these are not taxes, as distinguished from penalties, still the proceedings adopted by the defendant are a proper method of collecting the amount claimed, and it is, I think, conceded that, if these sums attempted to be assessed against

the various plaintiffs are penalties, then they must be enforced through some proper proceeding, in which the plaintiffs will have notice and their day in court and their right to be heard. I am of the opinion that the collection of a penalty, where the method is not specifically prescribed by statute, is by suit or other appropriate proceeding in court. This method is expressly provided by the statutes of the United States. Section 3213, R. S. (Comp. St. § 5937). But that isn't all. The method of procedure by suit is specifically provided for by this same section 35, title 2, of the National Prohibition Act under consideration here. Section 3187 of the Revised Statutes of the United States (Comp. St. § 5909), while authorizing the collector of internal revenue to collect taxes by distraint, does not pretend to authorize the collection of penalties by that method, but only certain specified penalties that attach to the taxes, legally levied, for nonpayment on demand, etc. In this statute these penalties are clearly additions provided by the statute for purposes of revenue.

In Ketchum v. U. S., Welden v. U. S., Henderson v. U. S., 270 Fed. 416, the Court of Appeals of this circuit had these statutes under consideration, and in that opinion the court, properly, I think, held that the word "inconsistent" used in the National Prohibition Act, section 35, title 2, repealing inconsistent laws, had a broad meaning, and speaking generally, a law, having for its primary purpose the absolute prohibition of the manufacture and sale of spirituous liquors, is inconsistent with legislation seeking to derive a revenue from such manufacture and sale by the imposition of taxes. The use of the words "tax" and "penalty" is not conclusive of the intent and purpose of Congress. In this connection it is proper to refer to the claim that is urged that by section 35, no one is relieved "from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor. No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against, and collected from, the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers."

The claim is made in these cases that, notwithstanding the manufacture and sale of spirituous liquors is absolutely prohibited, still the government intends to collect revenue taxes on such business. I think the Circuit Court of Appeals in Ketchum v. U. S., supra, declared a rational, reasonable interpretation of these statutes in the following language:

"The language of the section absolutely prohibits the payment of any tax in advance, which negatives the idea that the business may be taxed in the sense of the sections of the law upon which the indictment in this case is based."

It is urged that the Supreme Court of the United States in U. S. v. Yuginovitch, 256 U. S. ——, 41 Sup. Ct. 551, 65 L. Ed. ——, has interpreted these statutes favorably to the contention of the defendant. I have carefully reviewed the opinion, and find it an affirmance of the action of the trial court in quashing the indictment therein being con-

sidered upon the grounds that the acts of Congress under which the same were found were repealed before the finding of the indictment, and that the acts charged to have been committed by them were after the date upon which the Eighteenth Amendment to the Constitution and the Volstead Act became effective. This indictment involved:

(1) A charge that the defendants unlawfully engaged in the business of distillers within the intent and meaning of the internal revenue laws of the United States, and that in fact they did distill spirits subject to the internal revenue tax imposed by the laws of the United States, and did defraud and attempt to defraud the United States of the tax on said spirits.

(2) That the second charge, which was based on section 3279, U. S. R. S., charged that the defendants failed to keep on the distillery, conducted by them, any sign exhibiting the name or firm of the distiller, etc., as required by statute.

(3) The defendant was charged with carrying on the business of distilling within the intent and meaning of the revenue laws of the United States without giving bond required by law, in violation of section 3281, U. S. R. S.

(4) The defendant was charged with unlawfully making a mash fit for the distillation of alcoholic liquors, in a building not a distillery, duly authorized by law, in violation of section 3282, R. S. U. S.

"These statutes long constituted a part of the internal revenue legislation of the United States and were passed under the authority of the taxing power conferred upon Congress by the Constitution of the United States. At the time of their enactment it was legal, so far as the federal government was concerned, to manufacture and sell ardent spirits for beverage purposes. The government derived much revenue from taxing the business, which it sought to realize and protect by the systems of law of which the sections in question were a part. This policy was radically changed by the adoption of the Eighteenth Amendment to the federal Constitution, and the enactment of legislation to make the amendment effective. The Eighteenth Amendment in comprehensive and clear language prohibits the manufacture and sale of intoxicating liquors in the United States for beverage purposes, and confers upon Congress the power to enforce the amendment by proper legislation. To this end Congress passed the National Prohibition Law, known as the Volstead Act. 41 Stat. 305. It is a comprehensive statute intended to prevent the manufacture and sale of intoxicating liquors for beverage purposes." U. S. v. Yuginovitch, supra.

This, then, is an interpretation by the Supreme Court of the United States of the intent and purpose of the statutes as they stood prior to the enactment of the Volstead Act, and an interpretation of the intent and purpose of the Volstead Act as well. The court then proceeds, after consideration of the power of Congress under this broad authority to tax intoxicating liquors, notwithstanding their production is prohibited and punished, and notwithstanding the fact that the statute in this aspect had a moral end in view, as well as the raising of revenue, and holds that these present no valid constitutional objection to its enactment, and yet it was not necessary in that case to determine, and it was not determined, that such a tax was actually imposed, or that the penalties imposed by section 35 were or were not intended to be taxes, as a part of the system for obtaining revenue for the government, as distinguished from penalties for the violation of a prohibition statute.

It must be conceded, I think, that Congress, in the exercise of its power to provide for the raising of revenues, might lawfully impose a tax upon illicit distilling of spirituous liquors, and if such an authority had been exercised in a general plan outlined for the raising of revenue in which this was an item that had evidently been duly considered, and an intent and purpose to raise money in that way, it might be determined a tax, rather than a penalty. As said by the Supreme Court in this case, "by the enactment of the Volstead Law, this business, that had been taxed by the government, was destroyed," and it was no longer possible to raise the great amount of revenue theretofore assessed thereon, and that system of raising revenue must necessarily have been abandoned by the passage of the constitutional amendment and the enactment of the Volstead Law. Then, again, one of the outstanding phases of this statute, as suggested in this Supreme Court opinion, was to protect, by this system of laws, this large revenue from taxing this then legitimate business interest. The court specifically emphasizes the fact that this policy was radically changed by the adoption of this amendment and the enactment of this legislation.

[2] Viewing the administration of this statute in the light of the allegations of this bill and the facts that have developed in the investigation of these and other cases, it does not seem reasonable to attribute to Congress an intent and purpose that sovereignty should be exercised by administrative officers of the government for the purpose of taxation—this harsh and drastic procedure by an administrative officer, not in the enforcement of a general plan of taxation for the purpose of raising revenue, but in the power and the exercise of that power by an administrative officer in the exceptional case and independent of any general scheme or plan for the raising of revenue. To say that Congress contemplated this action is to say that they contemplated its administration in the way that has been demonstrated in these and other cases.

The levy of this tax upon the individual that is poor, because he has violated a statute, committed a misdemeanor, violated the police regulations of the country, and without a hearing, without notice, charge up to him large sums of money, immensely more than any of these plaintiffs here can possibly pay, file it in the proper county office, and thus constitute it a lien against anything that the plaintiff then had, or might thereafter acquire, with no hope on the plaintiff's part that he may ever be able to pay it, with no possibility of ever being relieved from it, not even by bankruptcy proceedings, and with an intent and purpose on the part of Congress to forever bar him from the possibility of progress along the lines of developing a home or the necessities of himself or family, if he is married, for the future, all in the name of a desire to raise revenue.

Conceding that Congress foresaw the enforcement of this statute in this way, it would, at the same time, have foreseen that a very negligible amount of revenue would thus be obtained, because of the poverty of the class of people who are naturally charged with a violation of these statutes. On the other hand, if there was an earnest effort on the part

of Congress to enforce the amendment to the Constitution, to prohibit the manufacture, possession, sale, and traffic in intoxicating liquors, and if in their judgment the imposition of these large penalties, as such, would tend to accomplish an enforcement of the statutes, the rights of those against whom these penalties were unjustly assessed can be preserved, because, if these are penalties, and if that was the intent and purpose of Congress, it is conceded that they cannot be taxed by an officer in the way this statute has been attempted to be enforced. All claims must necessarily be brought in some form of proceeding, and the question of the violation of the statute on the part of the citizen must be judicially determined. I cannot believe that it was ever the intent and purpose of Congress that a deputy collector of internal revenue, taking the word of various special agents, should list the reports made by them, and with that as a foundation, and that only, assess these harsh penalties, indiscriminately, against the citizenship of the country, and then sustain it in the name of the intent and purpose to raise revenue for the support of the government.

I have no antipathy toward this law. I believe that it should be enforced, just as any other law. I believe, however, that a defendant, charged with a violation of this statute, should have his day in court, and an interpretation of this statute that closes to him forever the hope of financial progress, by placing this lien against him, is to imply an intent and purpose on the part of Congress, inconsistent with the intent and purpose of the act. I am, therefore, of the opinion that such of these provisions of the Volstead Act as may be enforced against violators of that law are penalties, and not taxes; that such penalties cannot be assessed by an internal revenue collector, without giving the person charged his day in court. Finally, the procedure by distraint for the collection of these penalties, as threatened in these cases, cannot be sanctioned. There has been no adjudication in court as to the liability of the plaintiffs. This liability is denied. There has been no hearing. Distraint under such circumstances is not due process of law. Thorne v. Lynch, supra, and cases cited.

In each of these cases, the motion for preliminary injunction is granted, and counsel may prepare proper preliminary injunctions in said cases, respectively, enjoining and restraining defendant, and all persons acting under his direction or control, pending final determination of said cases, respectively, under and by virtue of warrants for distraint, issued or threatened, as set forth in the complaint in said cases, respectively; said warrant for distraint purporting to be for the purpose of collecting certain alleged taxes and penalties from said plaintiffs, respectively, as set forth in their respective complaints. The issue of the preliminary injunction in each of said cases is conditioned that the plaintiff, or some one in his behalf, shall make and file in this court a bond or undertaking to the United States, to be approved by the court, or the clerk of this court, for the benefit of all persons interested, in the sum of $150; the said bond or undertaking conditioned that said plaintiff will pay such costs or actual damages as may be awarded by this court to such persons interested, in case it shall be finally determined that the preliminary injunction was erroneously issued.

The restraining order heretofore issued shall remain in force in each case, for the period of 10 days from the date hereof, within which time plaintiff in each case may make and present the bond herein provided for.