(5 App. Div. 335.)

## PERKINS v. HEERT et al.

(Supreme Court, Appellate Division, First Department. May 22, 1896.)

1. LABELS—ABANDONMENT—WHAT CONSTITUTES.
   A label adopted and filed by a labor union to designate the goods made by its members is not abandoned by adopting and filing another label of the same size, shape, color, and general appearance, where the later label differs from the first only in a few words descriptive of the object of the union, but in such case the later label is merely an amendment of the first one, though one of the officers of the union testified that the first label was "not used any more in the union" after the later one was adopted, that it was "abandoned," and that afterwards the other label had been used. Williams, J., dissenting.

2. SAME—STATUTORY PROTECTION—CONSTITUTIONAL LAW.
   Laws 1889, c. 385, which provides that every union adopting a label to designate the products of the labor of its members may, by filing a copy of the label in the office of the secretary of state, obtain the right to enjoin the use, counterfeit, or imitation of such label, and to recover damages, does not discriminate against laborers generally, but merely provides for the protection of members of unions in the product of their workmanship.

3. STATUTES—PLURALITY OF SUBJECTS IN TITLE.
   The title of Laws 1889, c. 385, entitled "An act for the better protection of skilled labor, and for the registration of labels, marks, names, brands or devices covering the products of such labor of associations or unions of workingmen or women," does not embrace more than one subject.

Appeal from special term, New York county.

Action by George W. Perkins, as president of the Cigar Makers' International Union of America, against Henry H. Heert and another, to enjoin the use by defendant of an alleged imitation of the labels adopted by said union, and filed in the office of the secretary of state, in the state of New York, pursuant to Laws 1889, c. 385, and for an accounting. There was a judgment in favor of plaintiff, and defendants appeal. Affirmed.

Argued before BARRETT, RUMSEY, WILLIAMS, PATTERSON, and O'BRIEN, JJ.

M. S. Wise, for appellants.
A. Knauth, for respondent.

PATTERSON, J. As this case is presented to us, it is not necessary to consider whether the label, the subject of this action, may be protected under the general rules of law applicable to trademarks. If the plaintiff has a right to its exclusive use, it is one sufficiently secured by chapter 385 of the Laws of 1889 of this state, which expressly authorizes associations such as that of which the plaintiff is the president to file in the office of the secretary of state duplicates of labels adopted by such associations, and thereby obtain the privileges and rights conferred by that statute. The plain-

tiff avers the filing on the 20th of June, 1892, of duplicates of the particular label set forth as Exhibit A of the complaint, and this action was brought to restrain the illegitimate and fraudulent use by the defendants of that particular label. The judgment at the special term was in favor of the plaintiff, and awarded a perpetual injunction against the use by the defendants of that label.

One of the grounds upon which the appellant assails the judgment is that the label set forth in the complaint has been abandoned. The specific defense of abandonment is not set up in the answer, but there is a denial that the Cigar Makers' International Union of America has exclusively used the particular label in question since the filing of duplicates of it in the office of the secretary of state; and that denial, in connection with certain testimony and documentary evidence admitted without objection, may entitle the defendant to raise the question of the plaintiff's having a present right to be protected. Of course, if the plaintiff, within the full meaning of the word "abandon," has relinquished all use of the label, then there is no such existing right or equity; for the definite cessation of that use of the whole label, or the substantial parts of it, as a distinguishing mark or badge by which the manufactured cigars of the members of the international union are to be known and authenticated, would leave nothing for the courts to act upon, or to protect, respecting that particular label. It was said by Mr. Harris, a witness for the plaintiff, and the secretary of the label committee of the international union, and who had been connected with the committee for many years, that the label, Exhibit A (the one sought to be protected), "is not used any more in the union. It was abandoned. At the last convention in Milwaukee, held in September, 1893, it was decided to make the change as noted in the constitution on January 1, 1894, and since that time another label has been used." As before remarked, the testimony is in the case without objection, and in corroboration of it the defendants introduced a certificate of the secretary of state to the effect that a label was filed by the international union in his office on the 24th of April, 1894, which differs in some minor details from the "speaking part" of the particular label set forth in the complaint. Upon that evidence it therefore appears that the label to which the decree applies is not, in exact phraseology, in all respects similar to that which the members of the plaintiff's association now use, or did use at the time the action was brought; and it is urged that the label sued on does not authenticate goods now manufactured and sold by any of such members, and that whatever right was originally acquired under the statute to the use of the label, Exhibit A to the complaint, has been lost by being voluntarily surrendered or yielded up. The most striking feature of this case is that the defendants admit they are perpetrating a fraud upon the community and the Cigar Makers' International Union, and that they are imposing their goods upon the public under the false statement that they are made by members of that association, and they virtually claim the right to perpetrate that fraud with impunity. It was to prevent such barefaced and gross deceptions that the statute of 1889 was, in part,

passed. It provides that every union or association of working men or women adopting a label, mark, name, brand, or device intended to designate the products of the labor of members of such union or association of working men or women might obtain, by filing duplicate copies of such label, etc., in the office of the secretary of state, the right, by suit in any of the courts of record of the state, to enjoin the manufacture, use, display, or sale of counterfeits or colorable imitations of such label, etc., and to recover damages resulting from such wrongful manufacture, and requiring the courts, in a suit brought by any such association, to restrain by injunction every unauthorized use or display by others of the genuine labels, etc., in all cases where such use is not authorized by the owner, and to award damages and profits in such cases, the same as in cases of the use of counterfeited labels, marks, names, brands, or devices. It was pursuant to the authorization of that statute that the Cigar Makers' International Union of America filed the label set forth as Exhibit A to the complaint. It was of a particular form, color, and arrangement of letters and words, making an oblong slip of blue paper, several inches long, and something over an inch in width, with printed matter contained in an ornamental border, having at the left hand, and within the border, a printed impression of the seal of the association, and at the right hand, and still within the border, a blank space for a "local stamp." Within the border are also contained the following words:

"Sept. 1880. Issued by Authority of the Cigar Maker's International Union of America. Union-Made Cigars. This certifies that the cigars contained in this box have been made by a first-class workman, a member of the Cigar Maker's International Union of America, an organization opposed to inferior rat-shop, coolie, prison, or filthy tenement house workmanship. Therefore we recommend these cigars to all smokers throughout the world. All infringements upon this label will be punished according to law."

Then follows what purports to be the signature of the president of the association. The label used by the defendants is a fac simile of the one above described, and the intent with which it is used is not concealed, but openly avowed. On the 24th of April, 1894, the Cigar Makers' International Union of America filed with the secretary of state, not a new label, as the defendants contend, but an amendment of the label set forth as Exhibit A to the complaint in this action. It is identical in color, form, size, general appearance, display of conspicuous words, and in every substantial matter recited in it, with that filed in 1892; the only difference being that the words, "opposed to inferior rat-shop, coolie, prison, or filthy tenement house workmanship," are expunged from the amended label, and instead thereof are inserted the words, "devoted to the advancement of the moral, material, and intellectual welfare of the craft." In every other respect the label is precisely the same as that sued upon in this action, and by the petition of the association to the secretary of state, asking for the certificate required by the statute as the evidence of the petitioner's exclusive right to the use of the label, it is expressly stated that the label then sent for filing is a mere amendment of the one already filed. The definition

of a "label" is "a slip of paper, or any other material, bearing a name, title, address, or the like, affixed to something, to indicate its nature, contents, ownership, destination, or other particulars." Cent. Dict. That which constitutes the real and the whole value of the label is, in connection with its general form and appearance, its statements concerning the origin of the goods to which it is to be attached, and the evidence it furnishes of the genuineness of those goods as the product of the particular manufacturer whose work is certified to by the stamp of authenticity given by the label; and in this case the label sued upon is, with reference to the matters referred to, in every material respect, identical with the label now in use. The original and amended labels are not distinguishable in color, form, arrangement, display of lettering, location of seal, reservation of space for the local stamp, or in the size of the lettering or of the type. What is changed is merely an immaterial statement, which in no way affects the character, quality, origin, or ownership of the cigars manufactured or sold by the members of the association. The label, as originally adopted,—regard being had to the uses and purposes for which it was adopted,—has been in continuous use up to the time the action was brought, with the single exception of the immaterial matter, which in no way affects those substantial things which are the very essence of the label or badge by which the goods of the members of the association will be known and recognized by purchasers in the market. To all intents and purposes, the two labels are the same. The testimony of Mr. Harris was evidently given without understanding the technical sense in which the word "abandon" was used by the skillful and experienced counsel who was examining him. The use of the original label was not, as we have seen, abandoned, in a legal sense. All that was abandoned was the use of a few unimportant and altogether unnecessary words, for which were substituted other words; those rejected and discontinued having been made the subject of judicial criticism in other states, and having been construed as offensive and scandalous. But all that was of value, and all that was in reality appropriate to or necessary for the authentication of the product of the members of the international union, was retained in the label, without change or modification in any form. There was not, therefore, an abandonment of this label, in that strictly technical sense which would justify us in saying that by cessation of use the plaintiff has no right in the original label which should be protected by the decree of the court.

The other grounds for assailing the judgment are not well founded, and require but little consideration. It is said that the statements in the label respecting the goods of the members of the international union not being "inferior rat-shop, coolie, prison, or filthy tenement house workmanship," are libelous, and that, therefore, the label should not be protected. It is before the court that, in the present form of the label, those words are not used; but they are not libelous, any way. They are not a statement that any other particular manufacturer's goods are of the inferior quality or origin suggested by these words. They do not stigmatize the goods of any

particular manufacturer. They merely proclaim that the goods made by the members of the international union are not of a particular character. It is a negative way of certifying to the quality of the cigars manufactured by the members of the plaintiff's association. They do not affirm that any other designated person's goods are made in rat shops, or by coolie, prison, or filthy tenement-house labor. They libel nothing and nobody, but, not being in the amended label, the words are altogether immaterial now.

A discussion as to the constitutionality of the act of 1889 would be unimportant. The act does not discriminate against laborers or cigar makers generally, but merely provides that members of certain associations may be protected in the product of their workmanship by being permitted to use labels certifying to the excellence and character of their work, which is merely giving to such members, collectively, the right which any individual workman may acquire for himself under well-established rules of law. This statute in no way interferes with such individual rights. It is not one giving to a private corporation an exclusive privilege, for it is a right or privilege which all organizations answering the description contained in the statute may acquire. It is not a private bill embracing more than one subject. Its title is, "An act for the better protection of skilled labor, and for the registration of labels, marks, names, brands or devices covering the products of such labor of associations or unions of workingmen or women," which merely means an act for protecting skilled labor by providing for the registration of labels, marks, etc.

We think the judgment below was right, and should be affirmed, with costs.

BARRETT, RUMSEY, and O'BRIEN, JJ., concur.

WILLIAMS, J. I dissent on the ground that the action was based solely upon the use of the old label, which appears to have been entirely abandoned before it was used by defendants, and that, in order to maintain this action, it should have been based upon interference with the new label as well as the abandoned label.