<hr/>

## SMALL GRAIN DISTILLING & DRUG CO. v. HAMILTON, Collector of Internal Revenue, et al.

(Circuit Court of Appeals, Sixth Circuit. November 8, 1921.)

No. 3596.

Internal revenue ⟨⟩24—Intoxicating liquors ⟨⟩146(1)—Manufacturers and wholesale druggists only authorized to sell at wholesale.

Under National Prohibition Act, tit. 2, §§ 3, 6, 11, manufacturers and wholesale druggists only are authorized to sell liquor at wholesale, and a jobber is not entitled to a permit to withdraw whisky from bond for sale to druggists.

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Suit in equity by the Small Grain Distilling & Drug Company against Elwood Hamilton, Collector of Internal Revenue, and another. Decree for defendants, and complainant appeals. Affirmed.

A. J. Carroll, of Louisville, Ky., for appellant.

W. V. Gregory, U. S. Atty., of Louisville, Ky. (S. N. Russell, Asst. U. S. Atty., of Louisville, Ky., on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Prior to January 16, 1920, the date when the National Prohibition Act (41 Stat. 305) took effect (see Dillon v. Gloss [May 16, 1921] 256 U. S. ——, 41 Sup. Ct. 510, 65 L. Ed. ——), the appellant (hereafter called the jobber) had been for some time a wholesale dealer in, or jobber of, whisky, and owned a considerable stock, part tax-paid and on the floor in its store, and part non-tax-paid and evidenced by bonded warehouse receipts. The jobber was permitted to sell its floor stock to druggists, but was refused any permission to tax-pay and withdraw any of its whisky in a bonded warehouse in connection with a sale thereof to wholesale druggists. In refusing such permission, the defendants below were acting pursuant to the opinion of the Attorney General, who had advised that jobbers did not have the right here claimed. The appellant filed its bill in the court below against the chief enforcement officer and the collector, and asked a preliminary injunction. The court denied this request and, on defendants' motion, dismissed the bill.

Section 3 of title 2 of the act is an absolute prohibition of manufacturing, transporting, or possessing any intoxicating liquor, except as authorized in the act, and provides further that, while liquor

<hr/>

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for non-beverage purposes may be dealt in, this may be done "only as herein provided" and upon permit therefor. Section 6 wholly prohibits the manufacture, sale, or transport of liquor without a permit from the Commissioner (with exceptions not now important). Section 11 provides:

"All manufacturers and wholesale or retail druggists shall keep as a part of the records required of them a copy of all permits to purchase on which a sale of any liquor is made, and no manufacturer or wholesale druggist shall sell or otherwise dispose of any liquor except at wholesale and only to persons having permits to purchase in such quantities."

We have no doubt that it was within the power of Congress, conferred by the Eighteenth Amendment, to regulate and limit the sale of non-beverage liquor as far as Congress might reasonably think regulation and limitations were necessary to the effective enforcement of the prohibition of beverage liquor; indeed, this power thus to limit is not questioned by appellant's counsel, and we therefore come to the question whether, by the National Prohibition Act, Congress intended that jobbers of whisky should go out of business, since to permit wholesale druggists to buy only from manufacturers, and to permit retail druggists to buy only from manufacturers or wholesale druggists, might well be thought reasonably incidental to the authorized result. The prohibitory language of sections 3 and 6 is prima facie universal: those who seek to show a right within the exceptions stated must make that right clear. Nowhere in the act is the right of any one recognized to make sales at wholesale, except as section 11 necessarily implies that manufacturers and wholesale druggists may do so. The intermediate class of wholesalers and jobbers who are not druggists was well known, and the act could hardly have failed to provide a system of permits for them, if it was intended that they should have it. While it is by no means beyond dispute, yet we think it is reasonably clear that the act, in its general aspect and by the sections which have been quoted, evidences an intent that sales to druggists shall be made only by manufacturers and wholesale druggists. This conclusion is fortified by that clause of section 3, which says:

"All the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

Coming to other specific sections and their intent: Section 10 is as follows:

"No person shall manufacture, purchase for sale, sell, or transport any liquor without making at the time a permanent record thereof showing in detail the amount and kind of liquor manufactured, purchased, sold, or transported, together with the names and addresses of the persons to whom sold, in case of sale, and the consignor and consignee in case of transportation, and the time and place of such manufacture, sale, or transportation. The Commissioner may prescribe the form of such record, which shall at all times be open to inspection as in this act provided."

It is argued that section 10 provides that all persons selling shall make certain records, while section 11 requires manufacturers and wholesale and retail druggists selling to make certain additional records, and hence that the sales contemplated by section 10 reach sellers

not within the enumeration of section 11. There would be force in this inference, if sections 10 and 11 each related only to sellers; but section 10 is much more general. It provides for a general and primary record to be made by every person handling liquor, whether that person is vendor, or vendee, or carrier, and it prescribes a duty for every person concerned in the sale or delivery. Section 11 relates to vendors only, and prescribes a duty for them only. When this difference is observed, it is clear that the inference naturally to be drawn from section 11, that manufacturers and wholesale druggists are the only permissible wholesale vendors, is not weakened by any inconsistent inference from section 10.

Section 17 prohibits all advertising of liquor for sale, but permits manufacturers and wholesale druggists to mail price lists of the whisky they have for sale. Such inference as may be drawn from this section is confirmatory of that arising under section 11, viz. that it is only manufacturers and wholesale druggists who may lawfully sell at wholesale.

Section 37 is as follows:

"Nothing herein shall prevent the storage in United States bonded warehouses of all liquor manufactured prior to the taking effect of this act, or prevent the transportation of such liquor to such warehouses or to any wholesale druggist for sale to such druggist for purposes not prohibited when the tax is paid, and permits may be issued therefor." The remainder is not now pertinent.

Appellant's argument, based upon this section, is that it was intended to recognize the lawfulness of the business in question as carried on by jobbers, in so far as such business pertained to whisky manufactured before the act. This section says that nothing contained in the act shall "prevent the transportation of such liquor to * * * any wholesale druggist for sale to such druggist," and it is said that the right to transport for sale necessarily implies the right to sell, and carries with it, incidentally, the right to tax-pay and withdraw and sell old whisky in bond. It was thought by the Attorney General, in his opinion furnished to the Secretary of the Treasury (32 Atty. Gen. Op. 392), that the intent of section 37 was to permit jobbers to sell to druggists the tax-paid whisky which the jobbers had on their floors when the act went into effect, but that the right did not extend to the jobber's whisky in bond, evidenced by warehouse receipts. It is not easy to see any basis for this distinction. If there was an intent to authorize one class of sales by the jobber, it would seem that a similar intent must arise as to the other class. However, we think that an intent to allow the jobber to make either class of sales cannot be inferred from this section with that certainty necessary to establish an exception to the general prohibitions elsewhere found.

Section 37 does not deal directly with sale at all, but with two of the other generally prohibited things, viz. storage and transportation. It covers three classes of acts: (a) Storage in bonded warehouses; (b) transportation to bonded warehouses for storage; and (c) transportation to druggists for sale. The permission to store would naturally apply to all owners of whisky adapted to that purpose; but we think the reasonable meaning of (b) and (c), in view of the whole act, is

that the permission to transport to a warehouse for storage, or to a drug store for sale, applies only to that whisky otherwise authorized to be stored, and to those owners otherwise authorized to sell to druggists. The section, by permitting transportation, does not imply the right to sell. It intends only to permit the transportation of that which may lawfully be sold by the shipper to the consignee. The contrary conclusion would require us to say that permission to transport implies the right to sell, and that the right to sell, thus implied, furnishes the only known reason for permitting the transport, and, when thus stated, that construction is plainly untenable.

Accordingly we concur in the view underlying the decree below, viz. that the jobber has no right to sell to druggists the jobber's whisky in bond, and is not entitled to a permit therefor.

The decree is affirmed.