### UNITED STATES v. SKILKEN et al.

(District Court, S. D. Ohio, W. D. February 19, 1923.)

#### No. 106.

1. **Intoxicating liquors ⊚═137, 138, 146(1)—National Prohibition Act does not prohibit manufacture, transportation, and sale for nonbeverage purposes.**

    The National Prohibition Act does not absolutely prohibit the manufacture and sale of intoxicating liquors, but under title 2, § 3, liquor for nonbeverage purposes, such as for medicinal and sacramental purposes, may be manufactured, sold, and transported under a permit issued by Commissioner of Internal Revenue.

2. **Internal revenue ⊚═39, 40—Statute punishing counterfeiting strip stamps not repealed by National Prohibition Act; "label;" "stamp."**

    Act March 3, 1897 (Comp. St. §§ 6070–6077), regulating the bottling of distilled spirits in bond, and providing a punishment for counterfeiting the strip stamps required to be affixed to the bottles, was not repealed by National Prohibition Act, § 12, requiring labels stating certain matters to be attached to the containers of liquor manufactured for sale under title 2, which provides no penalty for counterfeiting the labels, in view of section 35, repealing only provisions of law inconsistent therewith, and providing that the regulations therein shall be construed as an addition to existing laws, and that the act shall not relieve any one from paying any taxes or charges imposed on the manufacture or traffic in liquor, and that the label called for in the Prohibition Act is different from the stamps required by the revenue and bottling in bond acts. A label is a slip of paper or any other material, bearing a name, title, and address, etc., affixed to something to indicate its nature, contents, ownership, etc., which must be provided by the person who is to affix the same. A stamp is an official mark set on a thing chargeable with duty or tax, showing that the duty or tax is paid, made by the United States government only, and sold at a price equal to the duty or excise to be collected.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Label; Second Series, Stamp.]

3. **Criminal law ⊚═202(3)—Violating provision of National Prohibition Act requiring labels not same offense as violating Bottling in Bond Act.**

    A person convicted of violating National Prohibition Act, § 12, requiring labels to be attached to containers of liquors manufactured for sale under title 2 of the act, would not be twice put in jeopardy or punished for

---

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the same offense, on conviction for disregarding Bottling in Bond Act March 3, 1897 (Comp. St. §§ 6070–6077), since the offenses are of a totally different character.

Alexander Skilken and others were convicted of conspiring to counterfeit and issue strip stamps placed over the mouth of bottles of liquor bottled in bond. A demurrer after the case was called for trial was overruled. Motions made for a directed verdict at the conclusion of government's evidence, and of all the evidence, were overruled. On motions for a new trial and in arrest of judgment, and for a review of former rulings. Motions denied.

Judgment affirmed 293 Fed. 923.

James R. Clark, U. S. Dist. Atty., and Thomas H. Morrow, Asst. U. S. Dist. Atty., both of Cincinnati, Ohio.

Mattern, Brumbaugh & Mattern, of Dayton, Ohio, for defendant Skilken.

SATER, District Judge. Section 1 of the Act of March 3, 1897 (Comp. Stat. §§ 6070–6077), provides that, whenever any distilled spirits deposited in a warehouse of a distillery of a given daily capacity have been duly entered for bottling purposes for withdrawal upon payment of the tax or export in bond, and have been gauged and the required marks, brands, or tax-paid stamps or export stamps, as the case may be, have been affixed to the package or packages containing the same, the distiller or owner of such distilled spirits, on proper declaration duly made may remove such spirits to a separate portion of the warehouse exclusively set apart for the purpose, and there, under the supervision of an authorized representative of the United States in charge of the warehouse, may immediately draw off such spirits and bottle, case, and pack the same. Packages of the same kind produced at the same distillery by the same distiller, but differing in proof, may be mingled. There may be no commingling of different products, or of the same products of different distilling seasons, nor the addition or subtraction of any substance or material, or the application of any method or process to change in any way the original condition or character of the product, except as authorized by the act. An adhesive engraved prescribed strip stamp is affixed to each bottle and passes over its mouth when it is filled from the cistern containing the spirits. The bottles are then packed in cases containing six bottles or multiples thereof. In each case there must not be less than two nor more than five gallons, which cases must be immediately removed from the distillery premises. There must be affixed to each case, before removal from the warehouse, a stamp denoting the number of gallons therein. Such stamps have a cash value of 10 cents each, are charged at that rate to the internal revenue collectors to whom issued, and are to be paid for at that rate by the distiller or owner using the same. There must also be burned on the side of each case the proof of the spirits, the registered distillery number, the state and district in which the distillery is located, the real name of the actual bona fide distiller, the year and distilling season (fall or spring), of original inspection or entry into bond, and the date of bottling. The same wording must be placed upon the adhesive engraved

strip stamp over the mouth of the bottle. The use of trade-marks on bottles is prohibited, unless the name of the actual bona fide distiller be placed conspicuously thereon.

By the terms of section 2, under regulations made by the Commissioner of Internal Revenue and approved by the Secretary of the Treasury, are prescribed the warehouse or portions thereof set apart for bottling purposes; the manner in which the business of bottling is done; the notices, bond, and returns to be given and accounts and records to be kept by persons conducting such business; the mode and time of inspection of such spirits; the accounts and records to be kept and returns made by government officers; all other matters and things deemed requisite for the secure and orderly supervision of the business; and the character and issuing of stamps to be used. Under regulations thus made the distiller may strain the spirits, and when necessary reduce such spirits as are withdrawn for bottling purposes to 100 per cent. proof for domestic purposes by the addition of pure water, and to 80 per cent. proof for export purposes. Section 6 imposes a penalty on any person who, among other things, shall re-use any stamp provided under the act after the same shall have been affixed to a bottle, or who shall re-use a bottle as a container of distilled spirits which has once been filled and stamped under the provisions of the act, unless he shall first have removed and destroyed the stamp so previously affixed thereto. Section 7 provides, in so far as pertinent here, that every person who, with intent to defraud, falsely makes, forges, alters, or counterfeits any stamp made or used under any provision of the Bottling Act, or who uses, sells, or has in his possession any such forged, altered, or counterfeited stamp, or any plate or die used or which may be used in the manufacture thereof, shall on conviction be fined not more than $1,000 and be imprisoned at hard labor not exceeding five years. Other sections relate to spirits bottled in bond for export.

The spirits named in the act may be whisky or fruit brandy, and, under, the Act of September 8, 1916, c. 463, § 405 (section 6070a, Comp. Stat.), gin. The stamps are prepared by the government in the form of a book, longest from right to left (section 3312, R. S. [Comp. St. § 6094]), and, when detached, leave a stub which remains affixed to the cover. Next to the stub is the stamp which the bottler is required to affix to the case. Attached to and extending to the right of such stamp is the strip stamp. The price paid for the case and strip stamps is 10 cents. The act betrays a high degree of care and watchful supervision to obtain a pure-bottled high grade liquor, which is exclusively a given designated season's product and is all of the same kind of product, free from sediment, charcoal, or other removable substance, unadulterated in any manner whatsoever, in such product's original condition or character, and of a desirable proof. The strip stamp is in effect a guaranty of the proof, purity, and excellence of the spirits contained in the bottle, and for this reason liquor bottled in bond is desired by users.

[1] The National Prohibition Act does not absolutely prohibit the manufacture and sale of liquor. In view of section 3, under a permit

issued by the Commissioner of Internal Revenue on application, liquor for nonbeverage purposes (for medicinal purposes, for instance) and wine for sacramental purposes may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished, and possessed. Keeping within the terms of the act, persons may still manufacture, wholesale, and retail it. Section 35 declares all provisions of law inconsistent with the act repealed, but only to the extent of such inconsistencies, and provides that the regulations contained in the act for the manufacture or traffic in intoxicating liquors shall be construed as in addition to existing laws. It expressly provides that the act shall not relieve any one from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor. Liquor revenue stamps or tax receipts for any illegal manufacture or sale may not be issued in advance, nor is any one relieved from any liability, civil or criminal, incurred under laws existing at the time the act was passed. If the legislative intent was to repeal all then existing revenue laws, the act would have so provided, and the qualifying language found in it would have been absent. The act indicates that some of such existing laws remain operative, and manifests an intention on the part of the Congress to tax the production of liquors, whether they are legally or illegally made. U. S. v. Yuginovich, 256 U. S. 450, 41 Sup. Ct. 551, 65 L. Ed. 1043, decided June 1, 1921, by the United States Supreme Court. Whether appropriate stamps may be issued in advance to persons legally engaged in the manufacture and sale of liquors is not now for determination, but the practice is to issue and require the use of stamps in the bottling of liquors in bond and in the lawful manufacture of liquor.

[2] The defendant urges that section 12 of the Prohibition Act is inconsistent with, and therefore operates to repeal, the act relating to the bottling of liquors in bond. That section provides that all persons manufacturing liquor for sale under the provisions of title 2 of such act shall securely and permanently attach to every container thereof, as the same is manufactured—(1) a label stating (a) the name of the manufacturer, (b) the kind and quantity of liquor in such container, (c) the date of its manufacture, and (d) the number of the permit authorizing the manufacture thereof; (2) persons possessing such liquor in wholesale quantities shall securely keep and maintain such labels thereon; (3) wholesalers shall attach to every package of liquor, for sale, a label setting forth (a) the kind and quantity of liquor contained therein, (b) by whom manufactured, (c) the date of sale, and (d) the person to whom sold, such label to be kept and maintained thereon until the liquor is used for the purpose for which such sale was authorized.

The above subdivisions (1), (2), and (3) of section 12 have been made for convenience of reference. Subdivision (1) is by its very language restricted in its application to manufacturers (distillers) only. The bottling of whisky in bond may be done, however, not by distillers only, but also by the owner of spirits to be bottled. It would seem, however, that in view of Small Grain Distilling & Grain Co. v. Hamilton (C. C. A. 6), 276 Fed. 544, jobbers are not owners, and that, under section 37, bonded warehouses may still be utilized for liquor manu-

factured prior to the Prohibition Act becoming effective. The owner, whether he be the distiller or the purchaser from him, may wish to handle only such spirits as carry on the container the guaranty of their purity. The manufacturer is required to attach to containers of liquor, "as the same is manufactured," a label. Bottling in bond occurs after the spirits are manufactured. The label called for is a quite different thing from the stamp mentioned in the Revenue and Bottling in Bond Acts. A label is:

"A slip of paper or any other material, bearing a name, title, address, or the like, affixed to something to indicate its nature, contents, ownership, destination, or other particulars." Cent. Dict.; Perkins v. Heert, 5 App. Div. 335, 39 N. Y. Supp. 223, 226; U. S. v. Herzog, 145 Fed. 622, 623, 76 C. C. A. 373; Higgins v. Keuffel, 140 U. S. 428, 433, 11 Sup. Ct. 731, 35 L. Ed. 470.

The label required must be provided and printed by the person who is to affix the same, and not by the government. The number of the permit must appear on the label, the like of which provision is not found in the Bottling in Bond Act. A stamp is:

"An official mark set upon a thing chargeable with duty or tax, showing that the duty or tax is paid. * * * A small piece of paper having a certain figure or sign impressed upon it, sold by the government to be attached to goods, papers, letters, documents, etc., subject to duty or the sum charged, as for postage; in order to show that such duty or charge has been paid; as postage stamps, receipt stamps, internal revenue stamps." Cent. Dict.; Bouvier's Law Dict. (Ed. 1897); 36 Cyc. 814, citing Black's Law Dict.

In Harkins v. Williard, 146 Fed. 703, 707, 77 C. C. A. 129, 133, it is said:

" 'Tax-paid spirit stamps,' as they are technically called, are nothing more than receipts authorized to be issued by the government to indicate the payment of taxes on distilled spirits, and under the law as amended can only be issued to the distiller and are therefore without value, except for the purpose for which the same are issued, and that purpose can be ascertained by an inspection of the stamps."

As stated by Bouvier, stamps are prepared under the direction of officers of the government, and sold at a price equal to the duty or excise to be collected. The stamps called for by the internal revenue laws to be used in connection with liquors are made by the United States only (section 3446 [Comp. St. § 6343]), and reach the users through revenue collectors—through governmental agencies only. The counterfeiting of them is made a crime. Section 3346 (Comp. St. § 6153). The proceeds arising from their sale constitute a part of the national revenue. The word "label," in so far as I am able to discover, does not occur in the internal revenue law relating to liquors. Labels are required of manufacturers of cigars (section 3394 [Comp. St. § 6204]), tobacco and snuff (section 3364 [Comp. St. § 6171]), oleomargarine (section 7 of the Oleomargarine Act [Comp. St. § 6219]), filled cheese (section 8 of the act relating thereto [Comp. St. § 6247]), and, under the War Act of 1898, of mixed flour (section 39 [Comp. St. § 6261]). But the statutes in dealing with the above articles draw the distinction between labels and stamps and require both—the one to be furnished by the individual users and the other by the government. This appears from sections 3394, 3395, 3397, etc. (Comp. St. §§ 6204, 6205,

6207), relating to cigars; sections 3364, 3369 (Comp. St. §§ 6171, 6178) relating to tobacco and snuff; sections 8 and 9 of the Oleomargarine Act (Comp. St. §§ 6220, 6221); sections 8 and 9 of the Filled Cheese Act (Comp. St. §§ 6247, 6248) and sections 39 and 40 (Comp. St. §§ 6261, 6262) of the Mixed Flour Act.

The label required by section 12 is not a stamp or the equivalent of a stamp. The provision for its use is "in addition to existing laws." Neither that section nor any language of the Prohibition Act provides for setting apart a warehouse or any part of a warehouse for bottling bonded liquors, or for strip stamps, or for bottling in bond, or for affixing strip stamps over the mouth of bottles; nor does the Volstead Act prohibit bottling liquors in bond, or require that cases into which bottles are packed shall contain six bottles or a multiple thereof, or designate in any manner how bottles shall be packed; nor does it declare the number of gallons to be packed in a case, or fix the minimum or maximum number of gallons in a case, or specify that the cases when packed shall be immediately removed from the distillery premises; nor does it require the affixing of a 10-cent stamp to each case before it is removed, to be paid by the distiller or owner using the same, or exact the burning on the government side of the case the proof of the spirits, or a statement of any kind as to the proof, or the date of bottling, or for the burning of anything whatsoever on the side of the case. No part of the legend appearing on the strip stamp under the requirements of the Bottling in Bond Act is called for by section 12, for the reason the prohibition act suggests nothing about a stamp of that character. Neither section 12 nor any other provision of the Prohibition Act provides for means for or suggests any mode of displaying the age of liquor in bottles or the period of its ripening, or affords any guaranty, expressed by label or otherwise, of the purity of bottled liquor, although the act recognizes and authorizes the use of liquor for the aged, the sick and infirm, and persons generally requiring it for medicinal purposes.

It can hardly be that the Congress deprived such classes of persons of the benefit of the only law on the statute books which safeguarded and measurably guaranteed the quality and purity of liquor to be prescribed by their physicians. Section 12 provides no penalty for the violation of any of its provisions, and, if a penalty is imposed therefor, it would seem it must be found in section 29, in which event a fine of not more than $500 may be imposed for the first offense, not less than $100 nor more than $1,000 or 90 days' imprisonment for a second offense, a fine of not less than $500 and imprisonment for not less than 3 months nor more than 2 years for any subsequent offense. These penalties, if applicable, are for violating the law relating to labels, and not the statute providing for stamps. The Prohibition Act does not allude to the forging or counterfeiting either of labels or stamps, but the Bottling in Bond Act specifically provides that every person who, with intent to defraud, falsely makes, forges, alters or counterfeits *any* stamp made or used under *any* provision of the act, or who uses, sells, or has in possession any such forged, altered, or counterfeited stamp, or any plate or die used or which may be used

in the manufacture thereof, shall on conviction be fined not to exceed $1,000 and be imprisoned at hard labor not exceeding 5 years. The severity of the punishment attests the importance attached to the provisions of the statute. The use of plates and dies is essential to the production of stamps, but not to that of labels, which may be printed in any printing establishment.

[3] If a person should be punished for disobeying the provisions of the Prohibition Act regarding labels, he would not be a second time placed in jeopardy, and would not be twice punished for the same offense, on conviction for disregarding the Bottling in Bond Act, for the reason the offenses are not the same, but of a wholly different character. The Prohibition Act, although a later statute, is not inconsistent with the Bottling in Bond Act, does not cover the same subject-matter, and does not therefore supersede or impliedly repeal the earlier act. The later statute does not cover the offense for which Skilken is on trial.

The conclusion reached harmonizes with the views of the Treasury Department as expressed in "Regulation 60 Relative to the Manufacture, Sale, Barter, etc., of Intoxicating Liquor." See sections 26–29, both inclusive. Since the Prohibition Act became effective, the sale of strip stamps and the bottling of liquors in bond have, continued as theretofore under the supervision of the Internal Revenue Department. The bottling does not relate either to the manufacture or the sale of liquors. A number of reported cases were cited by counsel, in some of which are utterances which suggest that the revenue laws relating to liquors have been wholly superseded by the Prohibition Act and that the tax on liquors has been abrogated. This does not accord with the utterances in the Yuginovich Case, in which it was found that the Congress has "manifested an intention to tax liquors illegally as well as those legally produced." The cases cited, as well as others which the court examined, are to be considered with reference to the issues specifically raised in them respectively. None of them touches the act relating to the bottling of liquors in bond.

The conclusion here reached is that that act has not been repealed, and, such being the case, the demurrer to the indictment, the motions for a directed verdict, for a new trial, and in arrest of judgment, are not well taken.