## STILES et al. v. SIMON et al.

(Circuit Court of Appeals, Sixth Circuit. July 21, 1923.)

No. 3910.

1. **Internal revenue ⬤⥱24—Order for removal of whisky to concentration warehouse held valid.**

Under Concentration Act Feb. 17, 1922 (Comp. St. Supp. 1923, § 6059a), authorizing the removal of distilled spirits for purposes of concentration from any warehouse to any other warehouse "upon the initiation of the Commissioner of Internal Revenue and under regulations prescribed by him," an order for such removal is not invalid because made by the Commissioner on application of the owner, as permitted by the regulations, where it is consistent with the general policy of the act.

2. **Internal revenue ⬤⥱24—Commissioner has power to take substitute bond on removal of spirits to concentration warehouse.**

On removal of spirits from a distillery warehouse to a concentration warehouse, under Concentration Act Feb. 17, 1922 (Comp. St. Supp. 1923, § 6059a), without payment of the tax thereon, and without consent of the distillery warehouseman, his liability on his bond for the tax is ipso facto terminated, and the Commissioner has authority to take a new bond as a substitute.

3. **Constitutional law ⬤⥱154(1)—Internal revenue ⬤⥱2—Concentration Act held not to impair distillers warehouse contract.**

The fact that before the passage of Concentration Act Feb. 17, 1922 (Comp. St. Supp. 1923, § 6059a), the distillery warehouseman had the exclusive right to bottle the spirits in bond, on request of the owner, which is taken away by the act, does not render it invalid, as impairing the distiller's warehouse contract.

4. **Injunction ⬤⥱54—Remedy at law for conversion held not to exclude jurisdiction.**

On refusal of a distillery warehouseman to deliver whisky for removal to another warehouse on order of the Commissioner of Internal Revenue, made under Concentration Act Feb. 17, 1922 (Comp. St. Supp. 1923, § 6059a), the fact that the owner might maintain an action at law for conversion does not afford him an adequate remedy, which excludes his remedy in equity to enforce compliance with the order.

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Suit in equity by Julia Simon and others, partners as J. Simon & Sons, against W. O. Stiles and others, partners as the Clear Springs Distilling Company. From an order granting a preliminary injunction, defendants appeal. Affirmed.

W. H. Fulton, of Bardstown, Ky., and Arthur B. Bensinger, of Louisville, Ky. (Fulton & Fulton, of Bardstown, Ky., on the brief), for appellants.

T. Kennedy Helm, of Louisville, Ky., and Charles A. Houts, of St. Louis, Mo. (D. J. O'Keefe, of St. Louis, Mo., and Trabue, Doolan, Helm & Helm, of Louisville, Ky., on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Appellants (whom we shall call defendants) operate a distillery bonded warehouse at Bardstown, Ky. Ap-

pellees (whom we shall call plaintiffs) reside at St. Louis, Mo., and own warehouse receipts, issued by defendants' predecessor corporation on December 12, 1916, and on later dates (and acquired by plaintiffs, as asserted, previous to the National Prohibition Act [41 Stat. 305]), for 725 barrels of whisky stored in defendant's distillery warehouse. These receipts acknowledge the holding of the whisky subject to the order of the depositor, "deliverable only on return of this warehouse receipt and the written order of the holder thereof, and on payment of the United States government taxes and all other taxes when due thereon." Storage charges are provided for at the rate of 5 cents per barrel per month from date of original inspection. The receipt further provides that the owner thereof "is to furnish us money to pay all taxes when due and to pay all accrued storage charges at expiration of seven years from date of entry into bond." On February 17, 1922, Congress passed the so-called "Concentration Act," providing "that for purpose of concentration, upon the initiation of the Commissioner of Internal Revenue, and under regulations prescribed by him, distilled spirits may be removed from any internal revenue bonded warehouse to any such other warehouse, and may be bottled in bond in any such warehouse before or after payment of the taxes, and the Commissioner shall prescribe the form and penal sums of bond covering distilled spirits in internal revenue bonded warehouses, and in transit between such warehouses."[1] By section 1 of the regulations adopted by the Commissioner of Internal Revenue on June 16, 1922, with the approval of the Secretary of the Treasury (T. D. 3351), the concentration statute was declared to authorize the Commissioner of Internal Revenue "to concentrate into a small number of warehouses all the distilled spirits at present stored in distillery, special bonded and general bonded warehouses." Section 5 of the regulations provided that:

"When deemed advisable for purposes of concentration, the Commissioner will direct the removal of spirits to the concentration warehouses designated by him. Applications requesting the Commissioner to direct the transfer of spirits to a concentration warehouse, designated by him, will be on form 236."

There was express provision that "such removals or transfers will be subject to the rules prescribed by law and regulations, so far as applicable, relating to removal of spirits from a distillery to a general bonded warehouse," with provision for settlement of accrued charges against the spirits and transportation costs to the concentration warehouse; for example, either by payment of such charges by the owner of the spirits to the distiller or warehouse proprietor from whose warehouse the spirits are to be removed and payment of transportation cost by the owner, or by assumption of such charges and transportation costs by the proprietor of the concentration warehouse to which the spirits are removed. By section 10 of the additional regulations promulgated and approved October 25, 1922 (T. D. 3404), it is provided that all spirits stored in a concentration warehouse under the act re-

[1] 42 Stat. c. 55, p. 375, being a provision of the act making appropriation for the Treasury Department for the fiscal year ending June 30, 1923 (U. S. Comp. Stat. 1923 Cum. Supp. § 6059a).

ferred to "shall be covered by transportation and warehousing bond form 1522, given either by the distiller of such spirits, by the owner thereof, or by the proprietor of the concentration warehouse in which they are stored."

The Commissioner of Internal Revenue having designated the warehouse of the Security Warehouse & Investment Company, at St. Louis, as a concentration warehouse under the act, and plaintiffs having applied to the Commissioner under section 5 of the regulations before referred to for an order for the removal to the St. Louis warehouse named of whisky owned by plaintiffs and stored in various distilleries in Kentucky, including that operated by appellants, the Commissioner issued orders to the defendants directing the removal of plaintiffs' whisky to the St. Louis concentration warehouse, whose owner duly obligated itself to pay all revenue taxes accruing upon the spirits in question. Permits from the proper federal prohibition officers for the transportation of the whisky in bond, from defendants' warehouse to the concentration warehouse of the St. Louis Company, having been obtained, defendants refused, on demand, to deliver the whisky for such transportation, nothwithstanding offer to pay all accrued charges of every kind thereon, and all taxes except the United States government taxes. Thereupon this bill was filed, praying a mandatory injunction requiring defendants to permit and facilitate the transportation of the whisky in question to the concentration warehouse of the St. Louis Company. After hearing upon bill and answer (treated as an affidavit), as well as other affidavits submitted by each party, the District Court issued a temporary injunction and restraining order as prayed by plaintiffs. From that order this appeal is taken.

[1] Defendants present a variety of objections to the maintenance of this bill. It is alleged that the attempted removal from defendants' distillery warehouse to the government concentration warehouse was not within the intention of the Concentration Act, because made in the interest of the owners, and not on the initiation of the Commissioner, and that such removal of whisky in small lots would not accomplish the purpose of concentration.

We cannot agree with this contention as applied to the facts of this case. The proceeding for removal of the whisky here involved was not an isolated transaction, but was one of a large number of similar proceedings relating to whisky owned by plaintiffs and stored in many different Kentucky distillery warehouses. There is nothing to indicate that the order before us was not made in the course of a good-faith effort by the Commissioner to carry out the manifest intention of the Concentration Act, by concentrating in a comparatively few government controlled warehouses whisky stored in a large number of distillery warehouses, in the interest of economy in guarding and inspecting liquors held in storage, and by way of effective protection against theft and loss of liquor incident to storage in distillery warehouses, thus facilitating the enforcement of the National Prohibition Act.

Nor, in the Commissioner's practice of receiving applications from owners for transfer of liquors to concentration warehouses, as contemplated by section 5 of the regulations, do we see anything inconsistent with the "initiation" by the Commissioner provided for by the

Concentration Act.[2] By the regulations, which the act gave the Commissioner power to adopt, removal is directed by that officer only "when deemed advisable for purposes of concentration," and "subject to the rules prescribed by law and regulations, so far as applicable, relating to removal of spirits from a distillery to a general bonded warehouse." A consulting of the convenience and interest of owners, so long as the general policy of the act is not contravened, is commendable rather than otherwise. The law plainly does not require the consent of the distiller to the removal, although we assume the Commissioner might receive applications from distillers as well as from owners. The considerations presented by plaintiffs in error in favor of the removal here in question include the fact that St. Louis was the place of plaintiffs' residence and business location, and the asserted greatly lessened storage and handling charges, as well as superior fire and police protection available for whisky stored in the St. Louis government controlled warehouse, as compared with defendant's distillery warehouse.

[2] Defendants further urge, against the validity of the attempted transfer, that by the terms of plaintiffs' warehouse receipts the whisky is not to be delivered to the owner, except "on payment of the United States government tax and all other taxes when due;" that by statute (R. S. § 3293, as amended [U. S. Comp. Stat. § 6034]) defendants were required to give bond for the payment of the government tax on the whisky before removal from the distillery warehouse, and within 8 years from the time of entry (on none of the whisky in question will the tax be due before December 12, 1924); that plaintiffs have not paid or offered to pay the government tax, and that the Concentration Act did not empower the Commissioner to discharge defendants' obligation therefor. The asserted conclusion is that defendants would still remain liable for the tax, notwithstanding the removal of the whisky to the concentration warehouse.

We cannot agree with this conclusion. Plaintiffs are not asking to withdraw their whisky from bond. As later shown, they could not lawfully do so. The rights of the parties are to be determined under the concentration act. That act not only expressly authorizes the Commissioner to prescribe "regulations" governing its enforcement, but provides that that officer shall prescribe "the form and penal sums of bond covering distilled spirits in internal revenue bonded warehouses and in transit between such warehouses." We are disposed to think (especially in view of the consideration presently to be mentioned) that the statutory provisions above cited were intended to give the Commissioner power to take a new bond as a substitute for the distillery warehouse bond, and to relieve the warehouseman from liability thereon. The Concentration Act is not detailed. The powers conferred on the Commissioner are stated in general terms and manifestly were intended to be comprehensive. But, however this may be, when Congress authorized the Commissioner (as it plainly did) to take whisky

[2] We attach no controlling importance to the fact that in the passage of the act the words "for purpose of concentration, upon the initiation of the Commissioner of Internal Revenue" were substituted for "upon application of the owner or upon the initiation of the Commissioner," as originally used.

from distillery warehouses and transport it to a concentration warehouse, and (as we must construe the statute to mean),[3] without the consent of the distillery warehouseman, the removal thereunder ipso facto terminated the liability of the warehouseman upon his bond. United States v. Ulrici, 111 U. S. 38, 42, 4 Sup. Ct. 288, 28 L. Ed. 344. It may be noted that section 10 of the regulations of October 25, 1922, expressly provides for such ipso facto relief from further liability upon the giving of the transportation and warehousing bond provided thereby, and it is held thereunder (T. D. 3404) that notice of such relief given to the distiller shall operate as a release of all the distiller's rights of lien for unpaid internal revenue taxes, and shall constitute official notice to the distiller that his liability for taxes on the spirits is relieved.

[3] Defendants further contend that the Concentration Act (if construed as we have construed it) impairs defendants' contractual rights. The argument is that previous to the act whisky could be bottled in bond only at the distillery warehouse where it was manufactured, and that the statutory provision therefor was part of defendants' contract, thereby forbidding bottling elsewhere than at defendants' warehouse, *and then only if defendants agreed thereto and upon prices and terms satisfactory to them.*

Passing by other considerations, it should be enough to say that the Concentration Act, in the competent exercise of police power, has by express provision for bottling in bond in concentration warehouse, taken away whatever right defendants may have had (not assuming, however, that such right had existed) to insist upon themselves doing such bottling.[4] Beer Co. v. Massachusetts, 97 U. S. 25, 24 L. Ed. 989; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205. Whatever right plaintiffs had to relief in the premises was based upon the Concentration Act and the orders of removal made by the Commissioner.

We see no merit in the proposition that an impairment of defendants' warehouse contract with plaintiffs is effected from the fact that in bottling under the Concentration Act plaintiffs would be compelled, as before that act, to put defendants' trade-name on their bottles. The requirement that the distiller's name appear on the stamp applies wherever the bottling is had. The resulting legal or equitable injury to defendants from such statutory use of the distillers' name is, we think, too shadowy for serious consideration.

[4] Defendants urge that plaintiffs have a complete and adequate remedy at law, and that equity has thus no jurisdiction over the instant suit, and insist that the bill should have been dismissed for this reason. Assuming (but not deciding) that plaintiff had a right of action as for conversion of the whisky for refusal to deliver it on demand, the ques-

---

[3] The Senate rejected a proposed amendment which would have limited the removal to distillery warehouses.

[4] Regulation No. 10, before referred to, provides that such bottling in bond may be had "at any time without previous payment of tax or consent of surety on any bond. After bottling, such spirits may continue to be stored in such warehouse until removed according to law." T. D. 3404.

tion is: Would such remedy be adequate? We think this question must be answered in the negative. It is not, and we think plainly could not, be claimed that plaintiffs could by replevin or other process obtain actual possession of their whisky. See Pattison v. Dale (C. C. A. 6), 196 Fed. 5, 9, 115 C. C. A. 639. Plaintiffs are, however, engaged at St. Louis in the business of selling warehouse receipts to druggists and others for whisky to be used for nonbeverage purposes. Being neither manufacturers nor wholsesale druggists, they cannot sell the whisky themselves, and so cannot themselves withdraw it from bond. Small Grain Distilling Co. v. Hamilton (C. C. A. 6) 276 Fed. 544. They can only sell the receipts. It seems a reasonable conclusion that the market value of these receipts among plaintiffs' trade at St. Louis would be much greater were the whisky stored in the government warehouse there, subject to immediate and ready withdrawal, than if stored in Bardstown with defendants, who deny the right of the receipt holder to withdraw it except upon conditions impracticable, if not impossible, of fulfillment. Especially is this so if, as plaintiffs assert, the expenses and risks of storage in defendants' warehouse are of the character claimed. But even if by action in trover plaintiffs might recover the real value of the whisky withheld, there could be no recovery for an injury not unlikely to result to plaintiffs' business from inability to use their receipts therein.

Wholly apart, however, from these considerations, plaintiffs' action is not upon its contract with defendants. They are substantially and equitably interested in the carrying out of the order of transfer made by governmental authority under the Concentration Act, and we think plaintiffs thus entitled to ask and obtain in equity the injunctional relief granted.

We have not discussed in detail all the considerations urged by defendants in support of their defense. We have, however, considered them all, and have discussed those which seem reasonably to justify discussion.

We think the decree below was right, and it is accordingly affirmed.