UNITED STATES *v.* YUGINOVICH ET AL.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE DISTRICT OF OREGON.

No. 523. Argued March 10, 1921.—Decided June 1, 1921.

1. Congress, under the taxing power, may tax intoxicating liquors,
   notwithstanding their production is prohibited; and the fact that
   it does so for a moral end as well as to raise revenue is not a con-
   stitutional objection. P. 462.
2. Section 3257 of the Revised Statutes, which, for the purpose of
   protecting the revenues, made it an offense for a distiller to de-
   fraud, or attempt to defraud, the United States of a tax on the
   spirits distilled by him, and penalized the offense by forfeiture of
   the distillery, etc., and heavy fine and imprisonment, was super-
   seded as respects persons manufacturing spirits for beverage pur-
   poses, by § 35, Title II, of the National Prohibition Law, which
   imposes a double tax and an additional penalty of $500 or $1,000
   only, thus covering practically the same acts and inflicting a lighter
   penalty. P. 463.
3. The repealing effect of this section of the later act is determined
   in full recognition of its declaration that the act shall not "relieve
   any person from any liability, civil or criminal, heretofore or here-
   after incurred under existing laws," but in the light also of
   settled principles governing the construction of penal statutes, the
   Eighteenth Amendment, and the provisions of the act itself making
   unlawful the possession of intoxicating liquors, or property designed
   for the manufacture thereof, and providing for their destruction.
   P. 463.
4. Section 3279 of the Revised Statutes, requiring distillers of spirits
   to exhibit a sign "Registered Distillery" and punishing violations
   by fine, § 3281, making it an offense, punishable by fine and im-
   prisonment, to carry on the business of a distiller without giving
   bond, and § 3282, punishing in like manner the making of mash in
   any building other than a distillery authorized by law, were also
   superseded by the National Prohibition Law, in so far as con-
   cerns the production of intoxicating liquor for beverage purposes.
   P. 464.

266 Fed. Rep. 746, affirmed.

ERROR to review a judgment of the District Court sustaining a motion to quash, and a demurrer to, an indictment. The facts are stated in the opinion, *post*, 457.

*Mrs. Annette Abbott Adams*, Assistant Attorney General, with whom *Mr. Leonard B. Zeisler*, Special Assistant to the Attorney General, was on the brief, for the United States:

The revenue laws can be said to be inconsistent with the National Prohibition Act only in so far as they interfere with its enforcement. In so far as their enforcement is an aid to the enforcement of the National Prohibition Act, it cannot be said in the face of the express provision of Title II, § 35, that the latter act repeals them.

It has frequently been ruled that there is no inconsistency between taxing an article and prohibiting its production entirely. *License Tax Cases*, 5 Wall. 462; *Foster v. Speed*, 120 Tennessee, 470; Cooley on Taxation, 3d ed., p. 14; *Youngblood* v. *Sexton*, 32 Michigan, 406; *Conwell* v. *Sears*, 65 Ohio St. 49; *State* v. *Moeling*, 129 La. Ann. 204; *Carpenter* v. *State*, 120 Tennessee, 586; *Webster* v. *Commonwealth*, 89 Virginia, 154; *State* v. *Smiley*, 101 N. Car. 709; *State* v. *Smith*, 126 N. Car. 1057; *Commonwealth* v. *Nickerson*, 236 Massachusetts, 281.

Applying the principle of these cases to the case at bar, it is clear that the provision of Title II, § 35, of the National Prohibition Act, that the act shall not relieve anyone from paying the internal revenue tax imposed upon distilled spirits, should be construed to mean that the tax must be paid upon such spirits even though they are distilled without a permit. That is its literal meaning and the one best calculated to effect the purposes of the act. In view of the provision of Title II, § 3, that "all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage

may be prevented," that is the construction which must be adopted.

The purpose of the provision that "upon evidence of such illegal manufacture or sale the tax shall be assessed against and collected from the person responsible for such illegal manufacture or sale, in double the amount now provided by law," is merely to confer upon the Commissioner of Internal Revenue that power to assess taxes where they have not been paid in the manner provided by law, which was conferred upon him by Rev. Stats., § 3182, generally, and by Rev. Stats., § 3253, where distilled spirits are removed from the place where they were distilled without paying the tax upon them and without being deposited in a bonded warehouse. This power does not come into existence until after the distiller has failed to perform his duty with regard to paying the tax on distilled spirits as defined by other laws.

But the National Prohibition Act contains no provision as to the amount of the tax, nor how it shall be assessed, nor how or when it shall be paid, nor any measures to prevent its evasion. It is obvious, therefore, that for direction on all these matters the revenue laws must be looked to. If the tax is not paid when it is due, the United States is defrauded and the distillers subjected to the penalties provided in Rev. Stats., § 3257.

The prevention of the secret distillation of spirits is as necessary to the prevention of their distillation without a permit as it is to prevent the evasion of the government tax on such spirits, and measures calculated to prevent such secret distillation do not interfere with but, on the contrary, are of material assistance in carrying out the purpose of the National Prohibition Act. It will not be contended that the sections here involved are actually inconsistent with any of its provisions. The failure of the National Prohibition Act to provide any means of preventing the evasion of the tax which

under its terms is imposed upon distilled spirits shows that they were intended to be continued in force.

It may be argued, however, that although the revenue laws are not actually inconsistent with the National Prohibition Act, they are repealed by it because it covers the whole subject-matter of the revenue laws and contains provisions plainly showing that it was intended as a substitute for those laws.

This contention is clearly unsound. The National Prohibition Act does not provide a substitute for the system of government supervision of the production of distilled spirits established under the revenue laws. The only change which it makes in that respect is that since the act came into effect no distilled spirits can be produced at all except when authorized by a permit issued by the Commissioner of Internal Revenue, and then only in accordance with regulations prescribed by him and by other provisions of the act, none of which are in conflict with the provisions of the revenue laws. This is a necessary deduction from the fact that under the National Prohibition Act all distilled spirits, whether produced with or without a permit, are subject to an internal revenue tax.

Since the act expresses the extent to which it was intended to repeal prior laws, the rule that, where a later act covers the same subject-matter as a prior one, it operates as an implied repeal of such prior act, would have no application, even if the National Prohibition Act did cover the same subject-matter as the revenue laws. *United States* v. *Claflin,* 97 U. S. 546; *Henderson's Tobacco,* 11 Wall. 652; *Great Northern Ry. Co.* v. *United States,* 155 Fed. Rep. 945, 953, affd. 208 U. S. 452.

It may be argued, however, that although the provisions of the revenue laws are not actually inconsistent with those of the National Prohibition Act, an intention to repeal the former must be presumed because the

penalties embraced by the later statute are lighter than those imposed by the earlier one for the same offenses. But this presumption applies only where the offenses denounced by both statutes are the same. It does not apply if each offense embraces an element not embraced in the other, as is the case here.

It is true that under some circumstances the same act may constitute a violation of both statutes, but since the offenses denounced by the revenue laws are not the same as those denounced by the National Prohibition Act, a person committing such an act may be prosecuted under both statutes. *Carter* v. *McClaughry*, 183 U. S. 365, 394; *Gavieres* v. *United States*, 220 U. S. 338; *Ebeling* v. *Morgan*, 237 U. S. 625.

The act shows clearly the intention that a prosecution under it should not be a bar to prosecution for the same act if that act also constitutes an offense under the revenue laws, for it provides in Title II, § 35, "Nor shall this act relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws."

The decisions of the lower federal courts sustain the Government's contentions. *United States* v. *Sohm*, 265 Fed. Rep. 910; *United States* v. *One Essex Touring Automobile*, 266 Fed. Rep. 138; *United States* v. *Turner*, 266 Fed. Rep. 248. *Contra: United States* v. *Windham*, 264 Fed. Rep. 376; *United States* v. *Puhac*, 268 Fed. Rep. 392; *United States* v. *Stafoff*, 268 Fed. Rep. 417.

*Mr. Ransom H. Gillett,* with whom *Mr. Barnet Goldstein* and *Mr. Walter Jeffreys Carlin* were on the brief, for defendants in error:

Sections 3257, 3279, 3281, and 3282, Rev. Stats., are contrary to the Constitution as amended by the Eighteenth Amendment. The revenue laws are for the purpose of aiding the collection of the government revenue and

taxes. *United States* v. *Hill,* 123 U. S. 681, 686; *United States* v. *Howell,* 20 Fed. Rep. 718, 719; *Hutton* v. *Terrill,* 255 Fed. Rep. 860, 862. These sections, therefore, are not penal statutes intended to punish violations of a statute or the Constitution, but are mere means to assure the payment of taxes imposed in other sections of the same acts upon lawful and constitutional enterprises. *Edwards* v. *Wabash Ry. Co.,* 264 Fed. Rep. 610.

The constitutional policy of the United States on the liquor question is now shown by the Eighteenth Amendment, and these taxing statutes passed fifty years ago cannot be continued in opposition to that policy. *License Tax Cases,* 5 Wall. 462, 474; *Knowlton* v. *Moore,* 178 U. S. 41, 61. "Subject to a compliance with the limitations in the Constitution, the taxing power of Congress extends to all usual objects of taxation." *Knowlton* v. *Moore, supra.* Certainly the power does not extend to acts prohibited by the Constitution itself. The acts for which a tax is sought to be imposed and collected from the defendants are acts forbidden by the Constitution and made criminal by a statute passed to carry into effect the constitutional provision. While this court has never passed directly upon the proposition of laying a tax upon crime, it is a fundamental principle of morality and justice, no less than an indispensable requirement of a sound public policy, that Congress cannot lay a tax and attempt to collect a revenue from an act that is forbidden by the Constitution. See *License Tax Cases, supra,* 469; *People* v. *Raynes,* 3 California, 366.

The enforcement provisions of § 5, Title I, and § 28, Title II, of the National Prohibition Act, merely confer the power to use existing governmental agencies formerly used to enforce laws now repealed. The intent of Congress was simply to turn over to the proper officers to enforce the new law the machinery built up in enforcing the prior law, and this fact in itself is an indication of the

legislative intent to repeal existing laws designed to enforce payment of a tax.

Section 35 of Title II, furnishes no authority for holding that the revenue laws affecting the manufacture of intoxicating liquors are not repealed by the constitutional provision. That section provides that it "shall not relieve anyone from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor." "Such liquor" means liquor the manufacture and sale of which is permitted by the act, i. e., liquor for non-beverage purposes and wine for sacramental purposes. The clause providing that "all provisions of law that are inconsistent" with the act are repealed, expressly repeals the sections of the Revised Statutes here in question. Those sections provide for a license for and a tax on the manufacture of that kind of liquor the manufacture of which is forbidden by the act itself, and hence are provisions of law "inconsistent" with the National Prohibition Act.

When Congress seeks to superimpose upon the punishment for violation of the National Prohibition Act the additional punishment it heretofore had imposed for violation of the internal revenue laws, it clearly has exceeded its powers and infringed the constitutional rights of citizens under the Fifth and Sixth Amendments.

The sections of the Revised Statutes relating to intoxicating liquors were repealed by the National Prohibition Act. With the adoption of the Eighteenth Amendment the public policy of the Nation changed and the liquor traffic became in itself an illegal and improper business. The National Prohibition Act was passed in furtherance of this changed public policy; it was intended to provide a complete system, in and of itself, for the regulation of intoxicating liquors for beverage and non-beverage purposes. Under these circumstances the well-known rule of implied repeal of statutes must be

applied.   22 Cyc. 1606; *United States* v. *Ranlett*, 172 U. S. 133, 140, 141; *Daviess* v. *Fairbairn*, 3 How. 636; *New Jersey Steamboat Co.* v. *The Collector*, 18 Wall. 478; *Henderson's Tobacco*, 11 Wall. 652, 657; *United States* v. *Barr*, 24 Fed. Cas. 1016, 1017; *United States* v. *Cheeseman*, 25 Fed. Cas. 416; *Rogers* v. *Nashville &c. Ry. Co.*, 91 Fed. Rep. 299, 323.

The National Prohibition Act is a penal, regulatory, and prohibitive statute.   The Revised Statutes, *supra*, are tax and revenue statutes pure and simple.   There is a basic repugnancy that cannot be overcome, and even the attempted saving clause of the National Prohibition Act is not sufficient to prevent the application of the well-settled rules of law.

The National Prohibition Act also comes within the rule that a statute covering the whole subject-matter of a former one, adding offenses and varying the procedure, operates, not cumulatively, but by way of substitution, and impliedly repeals the former.   *United States* v. *Claflin*, 97 U. S. 546, 551; *Norris* v. *Crocker*, 13 How. 429, 438.

In this connection the rule of clemency has application.   A subsequent statute imposing milder penalties impliedly repeals any former act on the subject.   *Smith* v. *State*, 1 Stew. 506; *State* v. *Whitworth*, 8 Port. 434; *People* v. *Tisdale*, 57 California, 104; *Hayes* v. *State*, 55 Indiana, 99; *United States* v. *Windham*, 264 Fed. Rep. 376.   In every instance, the penalties for violations set forth in the National Prohibition Act are not as severe as those contained in the Revised Statutes.

*Mr. Wayne B. Wheeler*, by leave of court, filed a brief as *amicus curiæ*.

MR. JUSTICE DAY delivered the opinion of the court.

This case is here under the Criminal Appeals Act. 34 Stat. 1246.   The indictment is in four counts.

The first count, based on § 3257 of the Revised Stat-
utes, 6 Comp. Stats., § 5993, charges the defendants with
unlawfully engaging in the business of distillers within
the intent and meaning of the internal revenue laws of
the United States; and that in fact they did distill spirits
subject to the internal revenue tax imposed by the laws
of the United States; and did defraud and attempt to
defraud the United States of the tax on said spirits.
The second count, based on § 3279 of the Revised Stat-
utes, 6 Comp. Stats., § 6019, charges that the defendants
failed to keep on the distillery, conducted by them, any
sign exhibiting the name or firm of the distiller, with the
words "Registered Distillery," as required by statute.
The third count, based on § 3281 of the Revised Statutes,
6 Comp. Stats., § 6021, charges the defendants with
carrying on the business of distilling within the intent
and meaning of the internal revenue laws of the United
States without giving the bond required by law. The
fourth count, based on § 3282 of the Revised Statutes,
6 Comp. Stats., § 6022, charges the defendants with un-
lawfully making a mash, fit for distillation, in a building
not a distillery duly authorized by law.

The defendants interposed a motion to quash the
indictment upon the grounds that the acts of Congress
under which the same was found were repealed before
the finding of the indictment, and that the acts charged
to have been committed by them were after the date
upon which the Eighteenth Amendment to the Federal
Constitution and the Volstead Act became effective.
Defendants also filed a demurrer to the indictment on
practically the same grounds. The motion to quash and
the demurrer were sustained by the District Court.
266 Fed. Rep. 746.

The sections of the Revised Statutes may be sum-
marized as follows: Section 3257 makes it an offense to
defraud or attempt to defraud the United States of a tax

upon spirits distilled by one carrying on the business of a
distiller; provides for forfeiting the distillery and the
distilling apparatus and all spirits found in the distillery
or on the distillery premises, and subjects the offender to
a fine of not less than $500 or more than $5,000, and
imprisonment of not less than six months or more than
three years.    Section 3279 requires distillers to exhibit
on the outside of their place of business a sign with the
words: "Registered . Distillery."    A violation of this
section subjects the offender to a fine of $500.    Section
3281 makes it an offense to carry on the business of a
distiller without having given bond.    For such offense
the penalty is a fine from $1,000 to $5,000 and imprison-
ment not less than six months or more than two years.
Section 3282 makes it penal to make or permit mash to be
made in any building other than a distillery authorized
by law.    A violation of this section subjects the offender
to a fine of not less than $500 or more than $5,000, and
imprisonment of not less than six months or more than
two years.

These statutes have long been part of the federal in-
ternal revenue legislation, and were passed under the
authority of the taxing power conferred upon Congress
by the Constitution of the United States.    At the time
of their enactment it was legal, so far as the Federal
Government was concerned, to manufacture and sell
ardent spirits for beverage purposes.    The Government
derived large revenue from taxing the business, which
it sought to realize and protect by the system of laws
of which the sections in question were a part.    This
policy was radically changed by the adoption of the
Eighteenth Amendment to the Federal Constitution,
and the enactment of legislation to make the Amend-
ment effective.    The Eighteenth Amendment in com-
prehensive and clear language prohibits the manufacture
or sale of intoxicating liquors in the United States for

beverage purposes, and confers upon Congress the power to enforce the Amendment by appropriate legislation. To this end, Congress passed a national prohibition law known as the Volstead Act. 41 Stat. 305. It is a comprehensive statute intended to prevent the manufacture and sale of intoxicating liquors for beverage purposes.

Before taking up the sections of the Revised Statutes, some provisions of the Volstead Act may be appropriately referred to. Section 3, Title II, provides that after the Eighteenth Amendment to the Constitution of the United States goes into effect it shall be illegal to manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in the act. Liquor for non-beverage purposes and wine for sacramental purposes may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished and possessed, but only as in the act provided, and the Commissioner of Internal Revenue may issue permits therefor. The act contains many provisions to make effective the purposes declared in § 3. Section 25 makes it unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violation of the act, or which has been so used, and provides that no property rights shall exist in any such liquor or property. The same section provides for the issue of search warrants, and if it be found that any liquor or property is unlawfully held or possessed, or has been unlawfully used, the liquor and all property designed for the unlawful manufacture of liquor shall be destroyed, unless the court otherwise orders. Section 29 provides that any person who manufactures or sells liquor in violation of Title II of the act shall for a first offense be fined not more than $1,000, or be imprisoned not exceeding six months, and for a second or subsequent offense shall be fined

not less than $200 nor more than $2,000 and be imprisoned for not less than one month nor more than five years.

In Title III elaborate provision is made for the production of alcohol in industrial alcohol plants. It provides for the taxation of such alcohol, and excepts industrial alcohol plants and bonded warehouses for the storage and distribution of industrial alcohol from certain sections of the Revised Statutes.

It is well settled that in cases of this character the construction or sufficiency of the indictment is not brought before us. *United States* v. *Keitel,* 211 U. S. 370; *United States* v. *Stevenson,* 215 U. S. 190. For the purpose of interpreting the statute we adopt the meaning placed upon the indictment by the court below. *United States* v. *Colgate & Co.,* 250 U. S. 300. As that court evidently construed the statutes upon the assumption that the charges had relation to intoxicating liquors intended for beverage purposes, we shall follow that view of the indictment in determining whether the former statutes are still in force.

Section 35 [1] (in the margin) in its first sentence repeals

[1] Sec. 35. All provisions of law that are inconsistent with this Act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws. This Act shall not relieve anyone from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor. No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against, and collected from, the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers. The payment of such tax or penalty shall give no right to engage in the manufacture or sale of such liquor, or relieve anyone from criminal liability, nor shall this Act relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws. The commissioner, with the approval

all prior acts to the extent of their inconsistency with
the National Prohibition Act, to that extent and no
more, and provides that no revenue stamps, or tax re-
ceipts, shall be issued in advance for the illegal manu-
facture or sale of intoxicating liquors, and that upon
evidence of such illegal manufacture or sale the tax shall
be assessed in double the amount now provided by law,
with an additional penalty of $500 as to retail dealers
and $1,000 as to manufacturers, and that the payment
of such tax or penalty shall not give the right to engage
in the manufacture or sale of such liquors, or relieve
anyone from criminal liability.

. That Congress may under the broad authority of the
taxing power tax intoxicating liquors notwithstanding
their production is prohibited and punished, we have no
question. The fact that the statute in this aspect had a
moral end in view as well as the raising of revenue, pre-
sents no valid constitutional objection to its enactment.
*License Tax Cases,* 5 Wall. 462, 471; *In re Kollock,* 165
U. S. 526, 536; *United States* v. *Jin Fuey Moy,* 241 U. S.
394; *United States* v. *Doremus,* 249 U. S. 86. The question
remains, concerning the applicability of § 3257, involving
the right to punish for attempting to defraud the United
States of a tax, Did Congress intend to punish such
violation of law by imposing the old penalty denounced

of the Secretary of the Treasury, may compromise any civil cause
arising under this title before bringing action in a court; and with the
approval of the Attorney General he may compromise any such cause
after action thereon has been commenced.

This section has given rise to different constructions in the federal
courts; in some it has been held that the National Prohibition Act has
repealed the old revenue laws. *United States* v. *Windham,* 264 Fed.
Rep. 376; *United States* v. *Puhac,* 268 Fed. Rep. 392; *United States*
v. *Stafoff,* 268 Fed. Rep. 417; *Reed* v. *Thurmond* (C. C. A. 4th Circuit),
269 Fed. Rep. 252. *Contra: United States* v. *Sohm,* 265 Fed. Rep. 910;
*United States* v. *Turner,* 266 Fed. Rep. 248; *United States* v. *Farhat,*
269 Fed. Rep. 33.

in § 3257 or ᴄs provided in the new and special provision enacted in the Volstead Act?

It is the contention of the Government that § 35 saves the right to prosecute as to taxes, as well as the acts charged as violative of the other sections of the Revised Statutes, because of the phrase with which the section concludes: ". . . nor shall this act relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws."

It is, of course, settled that repeals by implication are not favored. It is equally well settled that a later statute repeals former ones when clearly inconsistent with the earlier enactments. *United States* v. *Tynen,* 11 Wall. 88. In construing penal statutes, it is the rule that later enactments repeal former ones practically covering the same acts but fixing a lesser penalty. The concluding phrase of § 35 by itself considered is strongly indicative of an intention to retain the old laws. But this section must be interpreted in view of the constitutional provision contained in the Eighteenth Amendment and in view of the provisions of the Volstead Act intended to make that Amendment effective.

Having in mind these principles and considering now the first count of the indictment charging an attempt to defraud and actually defrauding the Government of the revenue tax, we do not believe that the general language used at the close of § 35 evidences the intention of Congress to inflict for such an offense the punishment provided in § 3257 with the resulting forfeiture, fine, and imprisonment, and at the same time to authorize prosecution and punishment under § 35 enacting lesser and special penalties for failing to pay such taxes by imposing a tax in double the amount provided by law, with an additional penalty of $500 on retailers and $1,000 on manufacturers. Moreover, the concluding words of the first paragraph of § 35, as to all the offenses charged, must

be read in the light of established legal principles governing interpretation of statutes, and in view of the provisions of the Volstead Act itself making it unlawful to possess intoxicating liquor for beverage purposes, or property designed for the manufacture of such liquor, and providing for their destruction. We agree with the court below that while Congress manifested an intention to tax liquors illegally as well as those legally produced, which was within its constitutional power, it did not intend to preserve the old penalties prescribed in § 3257 in addition to the specific provision for punishment made in the Volstead Act.

We have less difficulty with the other sections of the prior revenue legislation under which the charges, already set forth, are made. We think it was not intended to keep on foot the requirement as to displaying the words "Registered Distillery" in a place intended for the production of liquor for beverage purposes which could no longer be lawfully conducted; nor to require a bond for the control of such production; nor to penalize the making of mash in a distillery which could not be authorized by law.

The questions before us solely concern the construction of the statutes involved, under an indictment pertaining to the production of liquor for beverage purposes, and we think they were correctly answered in the opinion of the court below. It follows that its judgment is

*Affirmed.*