## JASPER v. HELLMICH, Collector of Internal Revenue, et al.

(District Court, E. D. Missouri, E. D. March 24, 1925.)

No. 6783.

**1. Internal revenue ⬅═45—"Taxes" imposed for illegal manufacture or sale of liquor by Prohibition Act are penalties.**

The impositions provided by Prohibition Act, tit. 2, § 35 (Comp. St. Ann. Supp. 1923, § 10138½v), are not taxes, but penalties for violation of the act, and their character is not changed by Act Nov. 23, 1921, § 5 (Comp. St. Ann. Supp. 1923, § 10138⅘c).

**2. Internal revenue ⬅═45—Taxes and penalties imposed by Prohibition Act are not enforceable by distraint.**

Neither so-called "taxes" nor penalties may be assessed, under Prohibition Act, tit. 2, § 35 (Comp. St. Ann. Supp. 1923, § 10138½v), without preliminary proof of violation of law, which must be made in proceedings which constitute due process of law, and executive officers are without power to make such finding, and to assess such impositions, and enforce the same by distraint.

In Equity. Suit by George Jasper against Arnold J. Hellmich, Collector of Internal Revenue, and others. On motion for preliminary injunction and motion by defendants to dismiss bill. Motion to dismiss denied, and injunction granted.

Conway Elder, of St. Louis, Mo., for plaintiff.

Allen Curry, U. S. Dist. Atty. and Claude Crooks, Asst. Dist. Atty., both of St. Louis, Mo., for defendant.

FARIS, District Judge. This is a suit for a permanent injunction to prevent defendants from collecting by distraint certain so-called taxes and tax penalties from plaintiff under the provisions of section 35 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½v).

Pursuant to certain regulations of the Treasury Department, made and promulgated for the making of collections of taxes and penalties under said section 35, supra, notice was given by defendants to plaintiff that there had been assessed against him taxes and penalties under said section 35 in the total sum of $1,866.66, for that he was alleged to have engaged in business as a retail liquor dealer, and advising plaintiff that he might, within 10 days thereafter, file his protest against such assessment and have an opportunity to show cause why such assessment should not be made final against him, and collection thereof be enforced by distraint.

Thereupon plaintiff filed his protest, duly verified, setting up therein, as also now in his bill of complaint, a denial that he had engaged in the business of a retail liquor dealer, and averring that he was not liable to pay such taxes and penalties. He further averred that the assessments proposed to be made are not taxes, but penalties; that he had never been convicted or adjudged guilty of any violation of the Volstead Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.); that neither the defendants nor their deputies or agents were by law empowered or authorized to make this assessment; and that such assessment and collection of these so-called taxes in the manner and form proposed was and is in violation of sections 1 and 2 of article 3 of the federal Constitution. I go out of the record to say that, since this case has been pending, plaintiff has been prosecuted for unlawful possession of liquor only, and has pleaded guilty and been punished by a fine. Of course, this does not alter the legal situation.

The matter now before the court is on a motion for a temporary injunction, submitted on the bill of complaint and the answer of defendants thereto, as also a motion for judgment on the pleadings. This answer admits all of the material allegations of the bill of complaint and contains also a motion to dismiss the bill for lack of equity. The provisions of section 35 of the Volstead Act, here involved and pertinent, are:

"All provisions of law that are inconsistent with this act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws. This act shall not relieve any one from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor. No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against, and collected from, the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers. The payment of such tax or penalty shall give no right to engage in the manufacture or sale of such liquor, or relieve any one from criminal liability, nor shall this act relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws.

"The Commissioner, with the approval of the Secretary of the Treasury, may compromise any civil cause arising under this title before bringing action in court; and with the approval of the Attorney General he may compromise any such cause after action thereon has been commenced."

[1] It is settled that the above section, standing alone, furnishes no authority to distrain property of the alleged taxpayer without hearing, notice, or evidence, and that the so-called taxes provided for in section 35, supra, are in fact penalties, and not taxes, and that injunction will lie to restrain collection or threatened collection thereof by distraint. Lipke v. Lederer, 259 U. S. loc. cit. 561, 42 S. Ct. 549, 551, 66 L. Ed. 1078. In the above case, at the page cited, it was said:

"The mere use of the word 'tax' in an act primarily designed to define and suppress crime is not enough to show that within the true intendment of the term a tax was laid. Child Labor Tax Case, ante, 20. When by its very nature the imposition is a penalty, it must be so regarded. Helwig v. United States, 188 U. S. 605, 613. Evidence of crime (section 29) is essential to assessment under section 35. It lacks all the ordinary characteristics of a tax, whose primary function 'is to provide for the support of the government' and clearly involves the idea of punishment for infraction of the law—the definite function of a penalty. O'Sullivan v. Felix, 233 U. S. 318, 324."

The above excerpt also makes clear, by broad inference, that the evidence to be relied on as the basis of assessment, or as "essential to assessment," is a conviction under the provisions of section 29 of the Volstead Act. Whether such assessment shall be had pursuant to a judgment in a civil case before a court, wherein the judgment of conviction shall constitute prima facie evidence of liability to pay these penalties, is left doubtful by the language of section 35, supra. Although the fact that power is given to the commissioner, by the last sentence of section 35, supra, *to compromise civil actions arising under title 2, either before or after suit,* lends some color to the notion that collections of these penalties were originally intended to be enforced by civil actions.

The Lipke Case, then, and many others which preceded it and followed it, settled the law, as it stood before the passage of the so-called Willis-Campbell Act. Act Nov. 23, 1921, 42 Stat. 223 (Comp. St. Ann. Supp. 1923, § 10138⅘ et seq.). The Lipke Case and others (Regal Drug Corporation v. Wardell, 260 U. S. 386, 43 S. Ct. 152, 67 L.

Ed. 318), settled the right (a) to proceed by injunction against distraint, as here sought to be done; (b) that the impositions provided by section 35 are not taxes, but penalties; (c) and that they cannot be collected by distraint, as here sought, without evidence of the fact of violation of the criminal statutes. What sort of evidence is required, and when and where and how it should be presented, were still left in doubt, except in so far as is hinted in the above excerpt.

So much being conceded, the question arises as to how far the situation has been changed by the passage of the later act, called the Willis-Campbell Act. This act, so far as pertinent, provides:

"All taxes and tax penalties provided for in section 35 of title II of the National Prohibition Act shall be assessed and collected in the same manner and by the same procedure as other taxes on the manufacture of or traffic in liquor." Section 5, Act Nov. 23, 1921, 42 Stat. 223.

The enactment of the above provision brings about a situation which is peculiar, if not anomalous. It is strenuously contended by defendants that by the above language of the Willis-Campbell Act the Congress intended (perhaps only among other ways, I suggest) to provide for the collection of the "taxes and tax penalties" set out in section 35 of the National Prohibition Act, in the same manner and by the same procedure as such collections are provided for under the provisions of section 3187, R. S. (Comp. St. § 5909); that is, by distraint, as here threatened and proposed to be done by defendants.

If the impositions are in truth and in fact taxes, then there is no doubt Congress has the power so to provide. United States v. Yuginovich, 256 U. S. 462, 41 S. Ct. 551, 65 L. Ed. 1043. But time and again, I repeat, not only by the Supreme Court of the United States, but by inferior courts, the so-called "taxes and tax penalties" of section 35, supra, have been held to be penalties pure and simple, and not taxes. Lipke v. Lederer, supra; Regal Drug Co. v. Wardell, supra; Thome v. Lynch (D. C.) 269 F. 995; Fontenot v. Accardo (C. C. A.) 278 F. 871; Ledbetter v. Bailey (D. C.) 274 F. 375; Middleton v. Mee (D. C.) 277 F. 492. If and when the Congress shall see fit, by a clear and unambiguous statute, to squarely and candidly denominate the impositions of section 35 of the National Prohibition Act as taxes pure and simple, then the situation may be simplified. That it has the power so to do the case of United States v. Yugino-

vich, supra, makes clear, beyond cavil or doubt; for it says, at page 462 (41 S. Ct. 553): "That Congress may under the broad authority of the taxing power tax intoxicating liquors notwithstanding their production is prohibited and punished, we have no question."

As the case stands, the Congress has in effect said that the "taxes and tax penalties" set out in section 35 of the National Prohibition Act may be collected by "the same procedure as other taxes on the manufacture of or traffic in liquor." The Supreme Court, I repeat, has said that Congress may tax that which is forbidden (United States v. Yuginovich, supra); but has the Congress yet done so?

If the impositions provided for by section 35, supra, were penalties before the passage of the Willis-Campbell Act, and upon this point there is left by the ruled cases neither doubt nor question, what is there in the latter act to change their meaning or color? The latter act does nothing as to this; its sole office is to change, or attempt to change, the manner of their collection. They are called in this act simply "taxes and penalties provided for in section 35 * * * of the National Prohibition Act." No sufficient effort is made by the Willis-Campbell Act to alter or change the inherent nature of these impositions, although, as said in the Yuginovich Case, the Congress had the power to do this. If, then, Congress merely provided penalties by section 35 as contradistinguished from taxes, obviously, and as a mere casual reading discloses, the language of the Willis-Campbell Act, above quoted, cannot, without violence, be fairly construed to have the effect to change these penalties into taxes.

This language merely deals with these impositions as they stand in section 35; it does not change the nature, or inherent character of these impositions in any degree whatever, although, as said, the Congress might have done this by a clear, candid, definite, and unambiguous enactment in the premises. The mere reference to these impositions in the last line of this enactment, "as other taxes," would clearly seem not to suffice, in the light of the fact that the section purports to deal with the "taxes and tax penalties" provided in section 35, and in light of the law; for it is so well settled as to be well-nigh fundamental that no tax can be levied without express authority of law (Scottish, etc., Ins. Co. v. Bowland, 196 U. S. 611, 25 S. Ct. 345, 49 L. Ed. 619; Buck v. Beach, 206 U. S. 392, 27 S. Ct. 712, 51 L.

Ed. 1106, 11 Ann. Cas. 732; Treat v. White, 181 U. S. 264, 21 S. Ct. 611, 45 L. Ed. 853), and where there is a doubt arising from an ambiguous statute, such doubt must be resolved against the tax (Eidman v. Martinez, 184 U. S. loc. cit. 583, 22 S. Ct. 515, 46 L. Ed. 697; United States v. Isham, 17 Wall. loc. cit. 504, 21 L. Ed. 728).

If it shall be contended that the language of section 35 itself makes clear that these impositions are taxes, and that the Congress therein undertook and clearly intended to tax the doing of things which it absolutely forbids to be done, the simple answer is that the Supreme Court of the United States has twice, at least, said that these impositions are not taxes, but penalties. Lipke v. Lederer, supra; Regal Drug Co. v. Wardell, supra.

[2] Since they were penalties before the passage of the Willis-Campbell Act, and since that act contains no language changing their legal nature and character, is it within the power of Congress to pass an act providing for their collection by distraint, as is provided and permitted by section 3187, R. S., in the case of ordinary taxes on distilled spirits? If this question can be answered in the affirmative, then a further question and inquiry arises:

Did Congress have power to vest administrative officers with the authority, before a conviction of any criminal violations of the Volstead Act by defendant, to hold a judicial hearing and to so far pass upon defendant's guilt of such violation as by their finding to mulct him in the penalties provided by section 35? Does such action constitute that due process of law guaranteed by the provisions of the Fifth Amendment to the Constitution? After long consideration and extensive examination of the authorities, I am forced to the conclusion that it had no such power. At least, this is true as to the manner in which defendants here undertake to construe the power granted by the quoted provision of the Willis-Campbell Act, as that construction is disclosed by what they are here doing and threatening to do.

There would seem to be other statutes whereby defendants, if they had been so advised and had seen fit to take the trouble, might have proceeded by plenary action to collect these "taxes and tax penalties." Sections 3207 and 3213, R. S. (Comp. St. §§ 5929, 5937). And such an action, brought in the proper court at a proper time, would seemingly lie, and would not be violative of the Constitution, and yet be wholly with-

in the intendment of Congress as expressed in the above-quoted language of the Willis-Campbell Act, as well as that of section 35, supra. I am not ruling these questions here, but suggesting this merely arguendo; for that procedure is not involved in this case, save in the sense that, if all that is said last above be the law, this construction would save the constitutionality of the act, leaving only in question the validity of the construction here sought by defendants to be put on the act.

It must be conceded, of course, that in the matter of the collection of taxes the usual definition and the legal conception of "due process of law" has ordinarily no place. The very necessities of the situation preclude the use by the sovereign of the ordinary courts of law in the collection of taxes. There are exceptions to this rule, however, in practice, e. g., in tax suits by the several states to foreclose liens for taxes on real estate; but the usual rule is as stated, and is well settled. Murray v. Hoboken Land Co., 18 How. 272, 15 L. Ed. 372; Kelly v. Pittsburgh, 104 U. S. 78, 26 L. Ed. 658. In the case of Kelly v. Pittsburgh, supra, at page 80, it was said on this point, this:

"Taxes have not as a general rule, in this country since its independence, nor in England before that time, been collected by regular judicial proceedings. The necessities of government, the nature of the duty to be performed, and the customary usages of the people, have established a different procedure, which, in regard to that matter, is, and always has been, due process of law."

What would be due process of law if the impositions here in question were taxes, is therefore not involved here, because these impositions are mere penalties and not taxes.

In favor of the power to proceed as defendants here propose and threaten to proceed, the case of Oceanic, etc., Co. v. Stranahan, 214 U. S. 320, 29 S. Ct. 671, 53 L. Ed. 1013, is largely relied on. It must be conceded that this case goes further in justifying the collection of a penalty by administrative officers, without a hearing and absent any prior conviction, than any other case to be found in the books. I think it may, on several grounds, clearly be distinguished, however, from the case at bar. A certain statute under review in that case made it unlawful for any transportation company to bring into the United States any person afflicted with a dangerous contagious disease, and upon its appearing to the sat-

isfaction of the Secretary, of Commerce that such alien so brought in had such disease at the time of embarkation, the offending company was required to pay to the collector of customs the sum of $100 for each violation of this law, and, till such payment was made, clearance papers could be refused to any offending vessel. Under duress of the last clause, this penalty was exacted, and paid under protest by the plaintiff in the case, and suit was brought to recover back the sum paid, upon the ground that this payment was exacted under such circumstances as to deprive the vessel offending and her owner of due process of law.

So it will be noted that the case has to do with phases of the right of Congress to deal with matters of immigration, and with the power of Congress to legislate with regard to the exclusion of aliens, touching which its' powers are well-nigh absolute. To an extent, also, was involved the somewhat analogous question of duties upon things imported into the United States, if that point be not specifically covered by the power to exclude aliens, or to fix conditions upon their right of entry.

Moreover, the statute applied in the above case provided that the certificate of the medical examination should be conclusive proof of the facts therein certified. Dukich v. Blair (D. C.) 3 F.(2d) 302, opinion by Judge Webster; E. D. Washington. There was therefore in that case evidence of violation. The above case had to do, also, with a situation arising from the status of a diseased ' person whose entry into the United States was forbidden, and who had never been lawfully admitted, and had, therefore, no legal status, even as a denizen of the United States.

But the case at bar deals with the property rights of a citizen of the United States, as is alleged in the bill and as is conceded by the motion to dismiss. Such a person is in all things allowed to demand due process of law for the protection of his life, his liberty, and his property. Even an alien, when once domiciled here, at least, is entitled to invoke such process. Wong Wing v. United States, 163 U. S. 238, 16 S. Ct. 977, 41 L. Ed. 140.

It is also suggestive that the Supreme Court in the case of Oceanic, etc., v. Stranahan, supra, saw fit expressly to except situations and statutes which attempted to endow administrative officers with power to exercise judicial authority, as witness this language:

"We have not considered the questions which would arise for decision, if the case presented an attempt to endow administrative officers with the power to enforce a lawful exaction by methods which were not within the competency of administrative duties, because they required the exercise of judicial authority."

The case at bar presents the fairly simple situation, in the final analysis, of administrative officers attempting to enforce the collection of a penalty for the violation of a criminal statute. This is a thing, which as baldly presented here, an administrative officer has no power, in my opinion, to do. Courts may do this; but, since the power to do it connotes and necessitates the exercise of judicial functions and authority, merely administrative officers may not do this, either with or without a hearing before themselves. For upon such hearing such officers must of necessity, and as a condition precedent to any finding they may make, and any conclusion they may reach, pass on the criminal guilt or innocence of the potential taxpayer, who becomes, upon the hearing, a potential criminal. The threatened action of the defendants is, in my opinion, unwarranted in law, and, if the construction put upon this statute by defendants be the only possible construction of it, then I am constrained to conclude that the statute would be constitutionally invalid, for that it deprives plaintiff of due process of law.

It is also suggestive that upon no thorough-going construction is there any specific or implied power conferred by the Willis-Campbell Act, or by any of the several statutes which provide for the collection of taxes and penalties, and to which reference is made in the above act, for defendants to organize themselves, by mere regulations, into a bureau for the judicial determination of the guilt or innocence of a person, whom any one may see fit to accuse of a violation of the National Prohibition Act.

For the basic principle of these views I am constrained, if not concluded, by what was said by the Supreme Court in the case of Regal Drug Co. v. Wardell, supra, at page 392 (43 S. Ct. 153), thus:

"We took pains to say that 'evidence of crime (section 29) is essential to assessment under section 35,' and that we could not 'conclude, in the absence of language admitting of no other construction, that Congress intended that penalties for crime should be enforced through the secret findings and summary action of executive officers. The

guarantees of due process of law and trial by jury are not to be forgotten or disregarded. See Fontenot v. Accardo, 278 F. 871. A preliminary injunction should have been granted.'"

Since this was said, as I have labored to point out, there has been enacted no statute which by clear, unequivocal, and unambiguous language changes the character of these so-called taxes and tax penalties. In fact, in view of the pointed reference to the guaranties of due process of law and trial by jury, it may well be questioned whether an express statute would serve to alter the situation. As a court of first instance, in view of what superior courts have said, I see no escape from the views here hurriedly expressed. I am forced to rely upon what has been ruled already, and may not speculate on what shall be ruled to-morrow, as also upon the fundamental principle that law enforcement connotes a reciprocal situation whereby those charged with its enforcement are just as fully bound to act according to law as are those against whom the law is sought to be enforced.

But, since there is another possible construction which might, in a proper case and in a case where the point is squarely involved, be taken of the language used in the Willis-Campbell Act, I do not deem it necessary to go so far as to hold the above-quoted part of it unconstitutional, as was done by Judge Webster, of the Eastern district of Washington, in the very late case of Dukich v. Blair, supra.

If Congress meant that recourse could be had to the provisions of sections 3207 and 3213, R. S., for the collection of these penalties, then it may well be that the quoted language of the Willis-Campbell Act is not unconstitutional. The applicability of the above sections is not before me, and no occasion arises, as already said, to rule this question. But this contingency serves to render the question of validity vel non doubtful at least, and in such case a court is admonished not to declare a statute unconstitutional. I am compelled to take the view that defendants may not collect these alleged taxes and penalties by the means here sought and threatened by them, and that a temporary injunction ought to issue upon plaintiff's executing and filing a good and sufficient bond, conditioned as required by law, in the sum of $2,500, upon the approval of which a temporary injunction may issue.

A decree may be presented accordingly.