## BILODEAU et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. September 7, 1926. Rehearing Denied October 11, 1926.)

No. 4801.

1. **Internal revenue** ⊜⇒2(16)—**Act, prohibiting withdrawal of alcohol tax free for manufacturing beverage and recovery by redistillation of denatured alcohol, was by Willis-Campbell Act continued in force, notwithstanding National Prohibition Act (Act June 7, 1906, § 2, National Prohibition Act, and Willis-Campbell Act, § 5 [Comp. St. §§ 6118, 10138¼ et seq. and section 10138⅘c]).**

Act June 7, 1906, § 2 (Comp. St. § 6118), prohibiting withdrawal of alcohol free of tax for manufacturing beverage and recovery, or attempt to recover, by redistillation of any denatured alcohol, not being "directly in conflict" with National Prohibition Act (Comp. St. § 10138¼ et seq.), under Willis-Campbell Act, § 5 (Comp. St. § 10138⅘c), continued in force, at least from the time the latter act went into force, notwithstanding the prohibition law.

2. **Conspiracy** ⊜⇒47—**Testimony held sufficient to involve all defendants in conspiracy to withdraw tax free denatured alcohol for purposes violative of Act June 7, 1906, § 2 (Comp. St. § 6118).**

Testimony, if credited by jury, *held* sufficient to involve all defendants in conspiracy to withdraw tax free denatured alcohol for purpose of recovery by redistillation, in violation of Act June 7, 1906, § 2 (Comp. St. § 6118).

3. **Criminal law** ⊜⇒393(1).

Any invasion of constitutional rights of another by officers taking documents from his person and premises cannot avail defendants complaining of the admission thereof in evidence.

4. **Criminal law** ⊜⇒1169(2).

Defendants were not prejudiced by admission of invoices illegally seized; all that could be

proven thereby being included in admitted un-contradicted competent testimony.

**5. Criminal law ⊜393(2).**

Constitutional rights of defendants, stock-holders, and officers of corporation did not ex-tend to books and papers of corporation, in their possession, relative to illegal search and seizure, and admission thereof against them.

**6. Criminal law ⊜393(1).**

Information obtained by officer examining books in' defendants' presence, and making notes, defendants not objecting and officers not taking books away, was admissible against ob-jection of invasion of constitutional rights.

**7. Criminal law ⊜422(1).**

Testimony as to statement of defendant not on trial, tending to show that he and an-other of the defendants charged with conspiracy were acquainted, was admissible.

**8. Criminal law ⊜516—Act of defendant not on trial in showing officer workable rectifier in his house held not in nature of confession of conspiracy to violate internal revenue law.**

There is nothing in the nature of a con-fession in the act of a defendant, charged with conspiracy to violate internal revenue law, but not on trial, in showing an officer, at his request, a rectifier in his house which could be successfully operated.

**9. Criminal law ⊜721(1)—Acts of district at-torney, claimed to amount to challenge to a defendant to become witness, held not preju-dicial.**

Acts of district attorney, claimed to amount to challenge to a defendant to become witness, *held* not prejudicial, any such challenge not be-ing accepted or refused, but the incidents be-ing passed as unimportant.

**10. Criminal law ⊜927(2).**

Motion for new trial for separation of jury during deliberation as result of illness of one juror and incapacity of another, *held* properly overruled in court's discretion, in view of show-ing that there was no conversation.

In Error to the District Court of the Unit-ed States for the Southern Division of the Northern District of California; Duval West, Judge.

L. Bilodeau and others were convicted of conspiracy, and they bring error. Affirmed.

Anthony S. Devoto and John J. Barrett, both of San Francisco, Cal., for plaintiffs in error Bilodeau and Sword.

Robert B. McMillan and Samuel M. Sam-ter, both of San Francisco, Cal., for plaintiff in error Frank.

John D. Harloe, of San Francisco, Cal., for plaintiff in error Everett.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, HUNT, and RUD-KIN, Circuit Judges.

GILBERT, Circuit Judge. The plaintiffs in error were convicted under an indictment which charged that they, together with Max Hoffman and Walter Young, conspired to se-cure possession of denatured alcohol free of internal revenue tax, with the intent and for the purpose of willfully, unlawfully, etc., re-covering and attempting to recover by redis-tillation the alcohol so secured by them, and knowingly to conceal and dispose of the same, in violation of section 2 of the Act of Con-gress of June 7, 1906 (Comp. St. § 6118), and the indictment alleged that the defendants were not manufacturers employing processes in which alcohol used free of tax under any of the provisions of the aforesaid act is ex-pressed or evaporated from the articles man-ufactured, and that they were not authorized or permitted to recover or attempt to recov-er such denatured alcohol, to wit, alcohol ren-dered unfit for beverage or liquid medicinal purposes. The indictment proceeded to set forth a series of overt acts alleged to have been committed in pursuance of the conspir-acy. The defendant Hoffman failed to ap-pear for trial and his bond was forfeited. Young pleaded guilty and testified for the prosecution.

[1] It is contended that the indictment is in-sufficient to charge an offense against the United States, that it is laid under the provi-sions of the Act of June 7, 1906, which act was impliedly repealed by the National Pro-hibition Act (Comp. St. § 10138¼ et seq.), and was not reinstated by the Act of Novem-ber 23, 1921, known as the Willis-Campbell Act, 42 Stat. 222, and United States v. Yug-inovich, 256 U. S. 450, 41 S. Ct. 551, 65 L. Ed. 1043, Selzman v. United States, 268 U. S. 466, 45 S. Ct. 574, 69 L. Ed. 1054, and United States v. Stafoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358, are cited. In the Yuginovich Case it was held that section 3257 of the Re-vised Statutes (Comp. St. § 5993), was by the National Prohibition Law superseded as re-spects persons manufacturing spirits for bev-erage purposes, and that section 3279 (section 6019), requiring distillers of spirits to exhibit a sign "Registered Distillery," and section 3281 (section 6021), making it an offense to carry on the business of a distillery without giving bond, and section 3282 (section 6022), punishing the making of mash in a building other than an authorized distillery, were also superseded by the National Prohibition Law in so far as concerns the production of in-toxicating liquor for beverage purposes. We

cannot agree that the decision affirms any principle applicable to the contention that the act of 1906 was superseded or repealed. Nor do we find that the decision in the Selzman Case holds by implication that the Act of June 7, 1906, was repealed by the National Prohibition Act. We think the decision goes no farther than to hold that under the Eighteenth Amendment Congress has power to prevent or regulate the sale of denatured alcohol which is not usable as a beverage, and that such power rests upon the ground that authority to enforce the prohibition of manufacture, sale, or transportation of intoxicating liquor, carries with it the power to enact any legislation reasonably adapted to promote that purpose. But however that may be, we deem the question immaterial in so far as the present case is concerned, for the Willis-Campbell Act was passed by Congress with a special view to remedy the situation found to exist in the Yuginovich Case. Section 5 of that act (Comp. St. § 10138⅘c) provides: "That all laws in regard to the manufacture and taxation of and traffic in intoxicating liquor, and all penalties for violations of such laws that were in force when the National Prohibition Act was enacted, shall be and continue in force, as to both beverage and nonbeverage liquor, except such provisions of such laws as are directly in conflict with any provision of the National Prohibition Act or of this act." In the Stafoff Case the court held that the accused could not be held for violation of section 3258, Rev. Stats. (Comp. St. § 5994) for acts committed prior to the date of the Willis-Campbell Act, and that the said act could not give a retrospective criminality to acts that were done before it was passed. It is to be observed that in that case three of the counts of the indictment charged acts subsequent to the Willis-Campbell Act, and as to those the court said: "But the supplemental act that we have quoted puts a new face upon later dealings. From the time that it went into effect it had the same operation as if instead of saying that the laws referred to shall continue in force it had enacted them in terms. The form of words is not material when Congress manifests its will that certain rules shall govern henceforth."

We find nothing in the National Prohibition Act which is "directly in conflict" with those provisions of the act of 1906 which are here the basis of the charge of conspiracy. Section 2 of that act prohibits the withdrawal of alcohol free of tax for manufacturing any beverage, and prohibits the recovery or the attempt to recover by redistillation any denatured alcohol, and prescribes the punishment for such acts. No provision of the National Prohibition Law refers to the same subject or is directly in conflict therewith. Even prior to the Willis-Campbell Act the Secretary of the Treasury, in issuing regulations under authority of section 15, title 3, of the National Prohibition Act (Comp. St. § 10138¾n), included the Act of June 7, 1906, as unrepealed, and set forth the provisions thereof. We hold that the indictment was sufficient.

[2] Error is assigned to the denial of the motion of the plaintiffs in error for an instructed verdict of acquittal and an exhaustive discussion of the evidence is presented. The principal contention is that there was failure of proof that Sword and Bilodeau were members of the conspiracy. The argument is directed rather to the weight of the evidence than to the question whether there was any evidence to go to the jury tending to prove the guilt of the accused. Sword and Bilodeau were dealers in drugs and chemicals. There was direct testimony of the witness Feigen of discussion with Sword and Bilodeau concerning the recovery of the ingredients of denatured alcohol and the method to be pursued in removing zinc sulphocarbolate; that Bilodeau suggested a chemical that would remove it; that it was agreed that Feigen should test that chemical and ascertain whether it could be successfully used; that after he tested it it was agreed that he could get from Sword and Bilodeau 400 gallons a month, and he promised them that in case he was caught he would take care of himself. There was proof also that Young was engaged in obtaining denatured alcohol from Sword and Bilodeau. But it is urged that there was absence of evidence that Sword and Bilodeau knew of the illegal use to which the alcohol was to be applied or evidence that they participated in the profits thereof. There was evidence that they knew that Young was engaged in delivering from them to Everett large quantities of denatured alcohol in bottles. Young testified that Bilodeau furnished him fictitious invoices of the bottles, invoices purporting to show that the bottles were to be delivered to various known druggists in San Francisco, and that he instructed Young, if intercepted by any federal officer or prohibition agent, to say that he was an expressman delivering to certain drug stores, and to exhibit the invoices and thereafter return the invoices to him; that, when Young asked him what he was to do in case he was caught coming back with the empty bottles, Bilodeau said, "Well, you are just simply an expressman and you are taking them to Lefkovitz or any other bottle dealer to sell." The only evidence that Sword and

Bilodeau received profits from the transactions was the fact that they received $4 a gallon for denatured alcohol that cost them 90 cents a gallon. It is true that they presented their explanation of the use of fictitious invoices and contradicted testimony which pointed to their participation in the conspiracy, but the jury were not bound to believe their testimony or to accept the explanation. It would serve no useful purpose to review the testimony more in detail. We find it sufficient, if credited by the jury, to involve all the defendants in the conspiracy.

[3, 4] We find no error in the denial of the motion to suppress and exclude certain documents obtained by the officers from the person and premises of Young and the evidence said to have been obtained thereby. The question of constitutional rights thus presented, so far as they concerned Young, can be of no avail to the plaintiffs in error. Schwartz v. United States (C. C. A.) 294 F. 528; Remus v. United States (C. C. A.) 291 F. 501; Brooks v. United States (C. C. A.) 8 F.(2d) 593. But it is contended that the invoices obtained from Young were the property of Bilodeau, and that the latter's constitutional rights were invaded by their seizure and introduction in evidence. It is said that they belonged to Bilodeau because of the fact that they were to be returned to him after having been used by Young. They were given to Young, however, for his use and protection and it is fairly inferable that they were his property notwithstanding that he intended to return them to Bilodeau. However that may be, there could be no legal objection to Young's testimony given of his own knowledge concerning the use of the invoices and their contents and the instructions given him as to the use of the same. The uncontradicted testimony that thus went to the jury included all that could be proven by the introduction of the invoices.

[5, 6] Nor do we find merit in the contention that there was invasion of the constitutional rights of Sword-Bilodeau Company, Inc. The plaintiffs in error Sword and Bilodeau owned each a one-fourth interest in the stock of the corporation and in their dealings with the other defendants they were transacting the business of the corporation. The corporation was not indicted. The constitutional rights of its stockholders and officers did not extend to the corporate books and papers in their possession. Wilson v. United States, 221 U. S. 361, 31 S. Ct. 538, 55 L. Ed. 771; Wheeler v. United States, 226 U. S. 478, 33 S. Ct. 158, 57 L. Ed. 309; Essgee Co. v. United States, 262 U. S. 151, 43 S. Ct. 514, 67 L.

Ed. 917. It was shown also upon the hearing on the petition to suppress the evidence by the affidavit of Driscoll, federal prohibition agent, that, when in the presence of Sword and Bilodeau he made his examination of the sales invoice records and took certain notes, there was no objection by any member of the corporation, and that he took away from the office no papers or books of any kind. Information so obtained was properly received in evidence. Levin v. United States (C. C. A.) 5 F.(2d) 598; A. Guckenheimer & Bros. Co. v. United States (C. C. A.) 3 F.(2d) 786.

[7, 8] Error is assigned to the admission of evidence of "confessions, narratives, and declarations" of a defendant not on trial. The first assignment relates to a conversation between Powers, federal prohibition agent, and Hoffman, who later forfeited bail and failed to appear at the trial. Powers approached Hoffman, and the latter said, "Are you looking for me?" to which the answer was: "Not if you are not fooling with jackass." Hoffman then said, "Are you looking for Dave?" and Powers said, "For Dave who?" to which there was no answer. It is argued that the "Dave" referred to must have been Everett. There is no proof that it was he, and we can-not see how the rights of any of the defendants were prejudiced by the testimony even if "Dave" was understood to be Everett. The testimony was admissible on the ground that it tended to prove that two of the defendants charged with conspiracy were acquainted. Dahl v. United States, 234 F. 618, 148 C. C. A. 384. The second assignment relates to the testimony of Powers to the effect that after the arrest of Young the officers raided Hoffman's place and found there a rectifier; that on being asked to show it Hoffman led Powers into his house and showed it to him; and that later the rectifier was operated in the presence of Powers. We are unable to see in that evidence anything in the nature of a confession on Hoffman's part. All that he did was to show the officer the rectifier, and the sum and substance of the evidence is that the rectifier could be successfully operated, for it was operated in the officer's presence. By whom it was operated is not shown. It is to be noted that there was evidence tending to connect Hoffman with the conspiracy. Young testified that Everett brought a still to his house for redistilling alcohol, operated it there; that he twice brought Hoffman with him; that he (Young) would empty into five-gallon cans the bottles of "alco rub" which he had obtained from Bilodeau & Sword and take it to Everett's house in a truck which Everett furnished; and that Everett would take the truck

and go somewhere with it, "I don't know where," but one of the officers testified that on several occasions Everett was seen to drive a closed and apparently loaded truck from his home to Hoffman's.

[9] Nor do we find that the defendants were prejudiced by the alleged misconduct of the district attorney in asking the defendant Frank to stand up and address conversation to a witness who, while endeavoring to identify that defendant, was in doubt. Counsel for the defense questioned the permissibility of the action of the district attorney, and, the court having expressed doubt, the matter was passed. No request was made to the court then or at any time to instruct the jury concerning the incident. So again, when the district attorney in rebuttal sought to introduce some checks made out to Sword & Bilodeau as payees, it was noticed that one of them was payable to Frank. Thereupon Frank's counsel objected that it was not legitimate rebuttal. The district attorney then said to counsel for Frank: "May I ask counsel to show these checks to his client before I read them, and if there is any further action in the matter I have no objection to his having an opportunity to meet them." Objection was made to this request as prejudicial, and defendant's counsel asked the court to instruct the jury to disregard it. The court said: "Well, gentlemen, if you place any importance on that I will instruct you to disregard it." It is contended that these incidents amounted to a challenge to the defendant Frank to become a witness, but, if there was a challenge, it was neither accepted nor refused. The incidents were passed by, and properly we think, as unimportant, and no ruling of the trial court concerning either is presented to this court for review.

[10] It is contended that it was abuse of discretion to deny the motion for a new trial, on the ground that to the prejudice of the defendants the jurors separated during their deliberations and held communication and conversation with unauthorized persons. It was shown that when the jury retired they were in the charge of the bailiff, O'Farrell; that Powers had been sworn in as a bailiff a few days before; that O'Farrell took the jury to a dinner about 6:30 o'clock; that on setting out it was found that the juror Hoag had become ill and it was thought necessary that he be taken to the hotel in a taxicab; that he was so taken by Powers, and on returning another of the jurors, who had developed some incapacity which interfered with his walking, was also brought back in the taxicab. All the jurors and the officers denied by affidavit that any communication was made by any person to any of the jurors. Powers deposed that he had no conversation with Hoag regarding the case or any other case. Upon considering the motion, the affidavits and the argument of counsel, the court held the controlling question to be whether or not the defendants had been in any way prejudiced or put at a disadvantage, or had been injured by reason of the separation of the jury, and observed: "It is clear that the door of opportunity was open by which the rights of these defendants might have been substantially affected, but there is no fact before the court which states that such took place." We agree with the court below that the motion was not founded upon substance and that it was properly overruled. Elder v. United States, 243 F. 84, 155 C. C. A. 614; Kelly v. United States (C. C. A.) 297 F. 212. It is well settled that the decision of such a motion rests in the sound discretion of the trial court. That rule is not questioned here. But it is said that the present case is brought within the doctrine of Mattox v. United States, 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917. The decision in that case, however, as explained in Holmgren v. United States, 217 U. S. 509, 521, 30 S. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778, rested upon the ground that the trial judge refused to receive affidavits and refused to exercise his discretion. It has no application to the case which is before us.

We find no error.

The judgment is affirmed.